**Ken CLAUSEN, Plaintiff and Appellant,**

v.

**Natalie CLAUSEN, Defendant and Respondent.**

**No. 17864.**

Supreme Court of Utah.

Dec. 5, 1983.

Kathryn Collard, Salt Lake City, for plaintiff and appellant.

David S. Dolowitz, Salt Lake City, for defendant and respondent.

HOWE, Justice:

Plaintiff, Ken Clausen, appeals from a decree of divorce challenging the distribution made by the trial court of the parties' marital assets and the admission into evidence of the testimony of a family and marriage counselor with whom the defendant, Natalie Clausen, had consulted prior to the filing of the divorce action.

Plaintiff and defendant were married in Calabasas, California on March 28, 1969. No children were born as issue of their marriage, but the plaintiff had a son by a previous marriage who lived with them. Defendant had been employed prior to the marriage but discontinued her employment shortly thereafter to attend college where she obtained a bachelor of arts degree and a teaching certificate.

In 1974 the parties were living in Los Angeles, California and then decided to move from that city as soon as the plaintiff could obtain employment in another state. In March or early April 1976, he obtained employment in Utah and located a home for his family here. The defendant and Kevin were both in school in California and it was agreed that they would join him at the conclusion of the school year in June.

Several weeks later, defendant telephoned plaintiff in Utah and informed him that she would not be joining him. She stated that she wanted a divorce so that she could have her freedom to pursue a career as a dancer. He tried to persuade her that a reconciliation was possible and he returned to California in May in an attempt to change her mind. However, she remained adamant in her desire to obtain a divorce. That same month the parties entered into an agreement regarding the division of their marital assets and properties. In the division plaintiff received the pro-

ceeds from the sale of a home and apartment which they owned in California. Defendant received their $8,000 savings account. They divided other personal property.

In June, plaintiff informed his wife that he was going to utilize the money he had received to purchase a home for himself and Kevin in Utah. The following month he made a down payment on a house in Park City, Utah and took possession. Defendant remained in California and has never resided in the home.

The parties agreed as part of their settlement that defendant would proceed and obtain a default divorce prior to the end of 1976. However she did not do so. Instead she asked plaintiff if the divorce could be delayed so that she could continue to maintain coverage under his medical insurance policy since she was still in school and was not employed full time. She was then experiencing health problems. He agreed to her request.

Almost three years later, plaintiff advised his wife that he did not think the divorce should be delayed longer. Shortly thereafter she sent him a letter demanding "a fair share" of their property and stated that if he did not respond within two weeks, she would contact an attorney in California. Thereupon, he filed the present action for divorce in this state in June 1979.

In an answer and counterclaim filed by the defendant, she alleged that the distribution of the proceeds of the home and apartment in California to the plaintiff was not agreed to by her and she asserted a claim to one-half of the equity in the Park City home purchased by the plaintiff. She also sought alimony. However, at the trial she testified that she had agreed to the settlement which the parties had made, and she withdrew her claim for alimony testifying that she was capable of supporting herself. She also withdrew a claim she had made in her counterclaim that her husband had abandoned her and caused her mental cruelty.

The court awarded a divorce to the plaintiff and did not disturb the settlement agreement between the parties except that it ordered the plaintiff to pay to the defendant one-half of the then existing equity in the home based on the court's finding that the home had a fair market value of $105,000. It is undisputed that there was a mortgage balance owing on the property of $37,838.47.

■ The plaintiff contends that the trial court abused its discretion in not confirming the division of the property made by the parties in their agreement and in modifying that agreement to give the defendant one-half of the equity in the home. Both parties agree that while a property settlement agreement is not binding upon the trial court in a divorce action, such agreement should be respected and given considerable weight in the court's determination of an equitable division. *Jackson v. Jackson*, Utah, 617 P.2d 338 (1980); *Klein v. Klein*, Utah, 544 P.2d 472 (1975); *Madsen v. Madsen*, 2 Utah 2d 423, 276 P.2d 917 (1954). Although the trial court made no written finding on the subject, he commented from the bench at the end of the trial that the division made by the parties was unfair to the defendant.

■ We find no abuse of discretion in that determination by the trial court. However, we find that in endeavoring to correct the unfairness he erred by awarding defendant a one-half interest in the plaintiff's equity in the Park City home, and then ordering him to buy that interest from her.

Defendant does not dispute that she agreed to the terms of the settlement which gave plaintiff the funds which he used to purchase the home. For nearly three years she raised no objection to the terms of the settlement, and in particular to his using the money he received. During that time he made the monthly payments on the home, thereby increasing his equity. She was pursuing her career and the divorce which she desired was being delayed at her request. Under these circumstances, the trial court was unwarranted in trying to follow the funds into the

investment which plaintiff made (viz. the house) and in awarding defendant one-half of the investment plus one-half of the increase in value which had accrued. This would allow her to profit from the investment he had made with funds she had agreed belonged to him. More seriously, it creates an unreasonable hardship on him to now require him to pay to her what the trial court determined was her interest in a non-liquid investment. When plaintiff moved to Utah, his wife refused to join him. He needed to obtain a home for himself and his son. This he did on the strength of the settlement. It is now unfair to declare that she has an equal interest in the present value of the house, and perhaps to force him to sell the residence in order to pay her one-half of the equity. Counsel for defendant cites no authority that a court, after setting aside a settlement, should endeavor to capture and divide the increase in the value of one party's share. *Fletcher v. Fletcher*, Utah, 615 P.2d 1218 (1980) and *Jackson v. Jackson,* supra, cited by defendant, do not involve that fact situation.

We agree with the trial court that the cash which was derived from the marital state was not divided equitably. Plaintiff received $49,300 from the sale of the California properties and the defendant received $8,000 from their savings, making a total of $57,300. The trial court apparently was of the opinion that the cash should be divided approximately equally. We agree. Therefore, the defendant should be awarded an additional $20,650. The case is remanded to the trial court to modify the decree of divorce accordingly.

The plaintiff also contends that the trial court erred in admitting the testimony of one Ulga Powell, a marriage and family counselor who had counseled the parties prior to their separation. She was allowed to testify as to the defendant's emotional state when she interviewed her at the time of the parties' separation. Plaintiff objected to the admission of that testimony at the trial based upon U.C.A., 1953, § 58–39–10 providing:

Any communication between the marriage or family counselor and the person counseled is privileged and confidential. Its secrecy shall always be preserved and this privilege is not subject to waiver, except:

(1) A marriage or family counselor may communicate orally about any person being counseled with another member of his profession or of a related profession who is also working with or has worked with the person being counseled. However, he may make no written communication with other professional persons about the communications from the person being counseled, unless the person being counseled consents in writing.

(2) A marriage or family counselor, to whom a person has been referred by a court or by a conciliation department working under the supervision of a court, may submit to the appropriate court a written evaluation of the prospects or prognosis of a particular marriage without divulging facts or revealing confidential disclosures.

(3) If the counselor is a party defendant in a civil, criminal or disciplinary action arising from that counseling, in which case the waiver is limited to that action.

Since it appears that none of the exceptions set forth in the statute apply in this case, it was error for the court to admit the testimony of Mrs. Powell concerning the defendant's feelings and emotional condition at the time of their interview. It is clear that the counselor's knowledge could have come only from communications covered by the statute. However, it appears that the error was harmless in that it did not alter the outcome of the case.

No costs on appeal awarded.

HALL, C.J., and STEWART, OAKS and DURHAM, JJ., concur.