Stanley B. BONHAM and Anne M. Bonham, Boyd F. Summerhays, and Arleen M. Summerhays, Plaintiffs and Appellants,

v.

Robert L. MORGAN, Utah State Engineer, Salt Lake County Water Conservancy District, a Political Subdivision of the State of Utah and a Body Corporate, and Draper Irrigation Company, a Utah Corporation, Defendants and Appellee.

No. 880143.

Supreme Court of Utah.

Feb. 23, 1989.

Rehearing Denied March 21, 1990.

James A. McIntosh, Salt Lake City, for plaintiffs and appellants.

R. Paul Van Dam, Michael M. Quealy, John H. Mabey, Jr., Salt Lake City, for Utah State Engineer.

LeRoy S. Axland, Carl F. Huefner, Kendrick J. Hafen, Salt Lake City, for Salt Lake Water Conservancy Dist.

Lee Kapaloski, David L. Deisley, Salt Lake City, for Draper Irrigation Co.

William J. Lockhart, Salt Lake City, for Nat. Parks and Conservation Ass'n.

Dallin W. Jensen, Salt Lake City, for Weber and Davis Counties Canal Co.

Edward W. Clyde, Salt Lake City, for Central Utah Water Conservancy Dist.

Joseph Novak, Salt Lake City, for Provo River Water Users Ass'n.

Ray L. Montgomery, Salt Lake City, for Salt Lake City.

Thorpe A. Waddingham, Delta, for Delta Canal.

PER CURIAM:

Plaintiffs appeal from a summary judgment which denied them standing to pursue count one of their complaint against the state engineer. The summary judgment was certified final under rule 54(b) of the Utah Rules of Civil Procedure to vest this Court with jurisdiction to hear the appeal. See Utah Code Ann. § 78–2–2(3)(e)(v) (Supp.1988).

Plaintiff Stanley B. Bonham, who is not a water user, protested against a permanent change application filed under Utah Code Ann. § 73–3–3 (1980)[1] in the office of the defendant state engineer (state engineer) in June of 1984 by defendants Salt Lake

---

1. Here, as well as in the following, we confine our analysis to the versions of the statutes in effect on December 26, 1985, the date of the state engineer's memorandum decision.

County Water Conservancy District and Draper Irrigation Company (applicants). Applicants sought to change the point of diversion, place, and nature of use of certain water rights in Bell Canyon, Dry Creek, Rocky Mouth Creek, and Big Willow Creek. At a subsequent hearing, Bonham produced evidence of substantial flooding and damage to plaintiffs' properties and adjacent public lands during 1983 and 1984. Bonham informed the state engineer that the flooding was the result of applicants' construction of a screw gate, pipeline, and diversion works after they obtained preliminary approval of their change application. According to Bonham, the flooding had occurred and would recur on a yearly basis whenever the applicants closed their screw gate, allowing the waters to be diverted down the hillside onto plaintiffs' properties and nearby property contemplated for use as a public park. Bonham objected that the proposed structures and improvements contemplated after final approval would detrimentally impact the public welfare.

The state engineer conducted on-site inspections but eventually issued his memorandum decision in which he concluded that he was without authority to address Bonham's claims in ruling on the permanent change application, as Bonham was not a water user, that the state engineer's authority was limited to investigating impairments of vested water rights, and that there was no evidence before him to indicate that the implementation of the change application would impair those rights. The state engineer then granted the permanent change application.

Plaintiffs sued in the district court in compliance with Utah Code Ann. § 73–3–14 (1980), which provides in pertinent part:

In any case where a decision of the state engineer is involved *any person aggrieved* by such decision may within sixty days after notice thereof bring a civil action in the district court for a plenary review thereof.... [N]otice of the pendency of such action ... shall operate to stay all further proceedings pending the decision of the district court.

(Emphasis added.) In count one of their complaint, they claimed that the state engineer failed to review the plans and specifications of the improvements, failed to conduct an investigation as required by Utah Code Ann. § 73–3–8 (1985) to determine what damage the change application would have on private and public property, and failed to comply with section 73–3–3 (1980) by not considering the "duties" of the defendant applicants. Plaintiffs alleged that the state engineer's disclaimer of any authority to consider, in connection with a permanent change application, any damages caused to plaintiffs as a result of his approval of the application, was contrary to the clear mandate of section 73–3–8, which requires an evaluation of the factors there set out, including any and all damage to public and private property and the impact the application will have on the public welfare. Plaintiffs also alleged that they had owned and occupied their approximately ten acres of property for twenty years and that for the approximately one hundred years since Draper Irrigation first constructed open ditches, flumes, pipelines, and other aqueducts to carry water from Bell Canyon Reservoir to its water treatment plant in Draper, Utah, plaintiffs' properties had remained undisturbed. Since the construction of the screw gates, in furtherance of the applied-for change, that was no longer the case. Virtual waterfalls cascaded down the hillside immediately east of plaintiffs' properties whenever applicants closed that gate and caused tremendous damage to plaintiffs' properties and the public area in the vicinity.

Before any discovery was conducted, the district court granted the state engineer's motion for summary judgment after concluding that the change application process under section 73–3–3 did not contemplate a consideration of all the factors listed in section 73–3–8; that the issues raised by plaintiffs were outside the limited criteria governing approval and rejection of change applications contained in section 73–3–3; and that plaintiffs were, therefore, not "aggrieved persons" within the meaning of section 73–3–14 and could not bring an action to review the decision of the state

engineer under section 73–3–3. The summary judgment lifted the stay imposed by section 73–3–14 on the approval of the permanent change application. The order was certified as final under rule 54(b) of the Utah Rules of Civil Procedure.

Plaintiffs appealed. This Court granted the request of the National Parks and Conservation Association (NPCA) to intervene as *amicus curiae* and granted a like request by Weber Basin Water Conservancy District, Weber River Water Users Association, Davis and Weber Counties Canal Company, Draper Irrigation Company, Sandy City, Central Utah Water Conservancy District, Salt Lake County Water Conservancy District, and Provo River Water Users Association (the water users).

Plaintiffs assigned errors in the trial court's ruling that (1) summary judgment in favor of the state engineer was proper; (2) plaintiffs were not "aggrieved persons" within the meaning of section 73–3–14; and (3) the state engineer's duties and responsibilities outlined in section 73–3–8 did not apply to permanent change applications covered by section 73–3–3. At oral argument, the parties conceded that the question of whether plaintiffs are aggrieved persons within the meaning of section 73–3–14 turns on whether the scope of the considerations appropriate for the state engineer under a section 73–3–3 proceeding for a permanent change application is the same as that listed in section 73–3–8. If it is, the state engineer concedes that plaintiffs are aggrieved persons; if it is not, plaintiffs concede that they are not aggrieved persons and that summary judgment was proper. The issues before us may therefore be reduced to the question of whether in permanent change applications (section 73–3–3) the state engineer has the same duties with respect to approval or rejection of applications as he has when considering appropriation applications (section 73–3–8). We hold that the state engineer's duties under the two statutes are the same and that plaintiffs therefore are aggrieved persons entitled to a trial on the merits of count one of their complaint.

■ Inasmuch as a challenge to summary judgment presents for review conclusions of law only, because, by definition, summary judgments do not resolve factual issues, this Court reviews those conclusions for correctness, without according deference to the trial court's legal conclusions. *Madsen v. Borthick*, 769 P.2d 245, (Utah 1988). That same lack of deference applies to the trial court's interpretation of statutes, which likewise poses a question of law. *Asay v. Watkins*, 751 P.2d 1135 (Utah 1988).

Utah Code Ann. § 73–3–3 (1980),[2] at the time the state engineer rendered his decision, read in pertinent part:

Any person entitled to the use of water may change the place of diversion or use and may use the water for other purposes than those for which it was originally appropriated, but no such change shall be made if it impairs any vested right without just compensation. Such changes may be permanent or temporary. Changes for an indefinite length of time with an intention to relinquish the original point of diversion, place or purpose of use are defined as *permanent changes. Temporary changes* include and are limited to all changes for definitely fixed periods of not exceeding one year. Both permanent and temporary changes of point of diversion, place or purpose of use of water including water involved in general adjudication or other suits, shall be made in the manner provided herein and not otherwise.

No permanent change shall be made except on the approval of an application therefor by the state engineer.... *The procedure in the state engineer's office and rights and duties of the applicants with respect to applications for permanent changes of point of diversion, place or purpose of use shall be the same as provided in this title for appli-*

---

**2.** This section was passed in 1937 and has undergone slight changes twice since 1959, L.1986 ch. 40, § 1; L.1987 ch. 161, § 289, but still retains the same 1937 language that is determinant to our decision in this case.

*cations to appropriate water;* but the state engineer may, in connection with applications for permanent change involving only a change in point of diversion of 660 feet or less, waive the necessity for publishing notice of such applications. No temporary change shall be made except upon an application filed in duplicate with the state engineer.... The state engineer shall make an investigation and *if such temporary change does not impair any vested rights of others he shall make an order authorizing the change.*

(Emphasis added.)

Section 73–3–8 (1985), at the time the state engineer rendered his decision, read in pertinent part:

(1) It shall be the duty of the state engineer to approve an application if: (a) there is unappropriated water in the proposed source; (b) the proposed use will not impair existing rights or interfere with the more beneficial use of the water; (c) the proposed plan is physically and economically feasible, unless the application is filed by the United States Bureau of Reclamation, and would not prove detrimental to the public welfare; (d) the applicant has the financial ability to complete the proposed works; and (e) the application was filed in good faith and not for purposes of speculation or monopoly. *If the state engineer, because of information in his possession obtained either by his own investigation or otherwise, has reason to believe that an application to appropriate water will interfere with its more beneficial use for irrigation, domestic or culinary, stock watering, power or mining development or manufacturing, or will unreasonably affect public recreation or the natural stream environment, or will prove detrimental to the public welfare, it is his duty to withhold his approval or rejection of the application until he has investigated the matter. If an application does not meet the re-*

*quirements of this section, it shall be rejected.*

(Emphasis added.)

Although the two statutes before us have remained virtually unchanged in their substantive provisions for over fifty years, the issue whether the state engineer must consider all the factors listed in section 73–3–8 when passing on a permanent change application under section 73–3–3 is one of first impression in this Court. We are, therefore, unable to draw on prior decisions from this Court except to the extent that they contain appropriate dicta or other pertinent comments on the statutes under consideration. Nor is case law from other jurisdictions helpful, as none of the cases cited by the state engineer deals with the type of cross-reference contained in our statutes. Our best sources for addressing the question, therefore, are the statutes themselves read in harmony with other statutes under the same and related chapters. In construing these statutes, we attempt to ascertain legislative intent behind ambiguous language and rely on the plain language of the statutes where no ambiguity exists. *Williams v. Mountain States Tel. and Tel. Co.,* 763 P.2d 796 (Utah 1988); *P.I.E. Employees Federal Credit Union v. Bass,* 759 P.2d 1144 (Utah 1988). Unambiguous language in the statute may not be interpreted to contradict its plain meaning. *Johnson v. State Retirement Board,* 770 P.2d 93 (Utah 1988).

We agree with the position taken by plaintiffs and the NPCA that both statutory purposes and a reasonable textual interpretation of water allocation statutes support the application of appropriation criteria to permanent change applications. The language critical to our determination was added to section 100–3–3, R.S. Utah 1933, in 1937. *See* L.1937, ch. 130, § 1. The amendment removed provisions addressing notice requirements[3] and added for the first time language defining permanent and temporary changes. After setting out procedures relating to applications for permanent changes, the 1937 amendment continued:

---

**3.** They now appear in Utah Code Ann. § 73–3–6 (1980).

The procedure in the state engineer's office *and the rights and duties of the applicant with respect to application for permanent changes* of point of diversion, place, or purpose of use *shall be the same as provided in this title for applications to appropriate water.*

(Emphasis added.)

The remaining amendments to section 100–3–3 dealt with procedures relating to temporary changes, criteria for rejecting applications for both permanent and temporary changes, procedures with respect to types of changes, and finality of the state engineer's decision and penalties for changes without following statutory prescriptions. In essence, the substantive provisions enacted in 1937 remain unchanged to date.

The appropriations statute, section 100–3–8, R.S. Utah 1933, to which the amendment made cross-reference, contained then, as section 73–3–8 does now, a specification on the duties of the state engineer when acting on appropriation applications. These were to be granted if, and only if, they did not interfere with more beneficial use, public recreation, the natural stream environment, or the public welfare, as more specifically set out in the statute. In contrast to the cross-reference between *permanent change* applications and appropriations, the .1937 amendments prescribed different and very summary procedures for *temporary changes,* under which the state engineer "shall make an investigation and *if such temporary change does not impair any vested rights of others, he shall make an order authorizing the change."* See also § 73–3–3 (1980). From these contrasting references and procedures, we draw the rational inference that in temporary change applications the review criteria (now contained in section 73–3–8) did not apply, but in considerations of permanent change applications they did. That same inference was drawn by Justice Wolfe in dictum in *Moyle v. Salt Lake City,* 111 Utah 201, 225, 176 P.2d 882, 895 (1947), on other grounds in a case that determined the propriety of an award for a temporary taking of water rights under an abandoned condemnation proceeding:

It should be noted that in case of an application for a *permanent* change as compared to a temporary change the procedure shall be the same as is provided for in applications to appropriate water. Section 100–3–8, U.C.A.1943, declares when it shall be the duty of the State Engineer to approve an application. The right of the applicant is not absolute. The Engineer is required to determine certain facts some of which involve the element of judgment. In the case of an application for a temporary change of use the Engineer *"Shall* make an order authorizing the change" "If such temporary change does not impair any vested rights of others." ... [T]he word "shall" is used in section 100–3–3 only in connection with an application for a temporary change of place of diversion or place or purpose of use.

(Emphasis in original.)

Plaintiffs and the NPCA point out that Justice Wolfe's interpretation of the permanent change application statute also relied upon the predecessors of Utah Code Ann. § 73–1–1 (1980), "[a]ll waters in this state, whether above or under the ground are hereby declared to be the property of the public, subject to all existing rights to the use thereof," and of Utah Code Ann. § 73–1–3 (1980), "[b]eneficial use shall be the basis, the measure and the limit of all rights to the use of water in this state." Plaintiffs and the NPCA, like Justice Wolfe, rely on those general provisions to underscore their position that neither the right to appropriate water nor the right to permanently change its use or place of use is absolute. The conditioning of that right, they say, was acknowledged by our Supreme Court in *United States v. Caldwell,* 64 Utah 490, 502–03, 231 P. 434, 439 (1924), when it stated:

[A]ppellants' right to change the place of diversion is not an absolute or vested right, but is only a conditional or qualified one. No such change can be made if thereby the public, or any other appropriator, prior or subsequent, is adversely affected.

*See also Tanner v. Humphreys,* 87 Utah 164, 168, 48 P.2d 484, 486 (1935) (plaintiff alleged, inter alia, that the approval of her permanent change application would not be detrimental to the public welfare).

Even were we convinced, which we are not, by the state engineer's argument that the "procedure in the state engineer's office" in section 73–3–3 refers only to his ministerial duties, the lack of precision in the cross-reference is of little avail to the state engineer. The further mention in that section of the "rights and duties" of the applicants and the reference to section 73–3–8 are sufficient by themselves to show that the legislature meant to require more than similar procedures alone. The only reasonable meaning to read into section 73–3–3 is that the state engineer must investigate and reject the application for either appropriation or permanent change of use or place of use if approval would interfere with more beneficial use, public recreation, the natural stream environment, or the public welfare. It is unreasonable to assume that the legislature would require the state engineer to investigate matters of public concern in water appropriations and yet restrict him from undertaking those duties in permanent change applications. Carried to its logical conclusion, such an interpretation would eviscerate the duties of the state engineer under section 73–3–8 and allow an applicant to accomplish in a two-step process what the statute proscribes in a one-step process. For all that an applicant would need to do to achieve a disapproved purpose under section 73–3–8 would be to appropriate for an approved purpose and then to file a change application under section 73–3–3.

Our interpretation that the state engineer's duty to investigate both appropriation and permanent change applications for interference with public use is validated by plain language found in the three protest statutes in chapter 3 of title 73, Utah Code Ann. § 73–3–7, § 73–3–13, and § 73–3–14. Section 73–3–7 permits "any person interested," not just a water user or an owner of vested rights, to protest the granting of an application under title 73—ergo, for appropriation *or* change—"which *shall* be duly considered by the state engineer." Section 73–3–14 permits "any person aggrieved" by the state engineer's decision to bring a civil action in the district court for plenary review of the decision. In contrast to those two protest statutes, section 73–3–13 restricts the right to protest the lack of diligence in construction of water works and in the application of water to beneficial use to "any other applicant or any user of water from any river system or water source." It would stand to reason that the legislature would have placed the same limiting language in sections 73–3–7 and 73–3–14 had that been its intent. The distinction is deliberate, not inadvertent, and does not comport with the state engineer's interpretation. Unambiguous language in the statute may not be interpreted so as to contradict its plain meaning. *Johnson v. State Retirement Board,* 770 P.2d at 95.

■ We hold that the state engineer is required to undertake the same investigation in permanent change applications that the statute mandates in applications for water appropriations and that plaintiffs are aggrieved persons who have standing to sue him pursuant to Utah Code Ann. § 73–3–14 (1980) for a review of his decision approving the subject change application. The summary judgment in favor of the state engineer is vacated, and plaintiffs' complaint against him reinstated for trial on the merits.

JACKSON, Court of Appeals Judge, concurs.

HOWE, Associate C.J., having disqualified himself, does not participate herein; NORMAN H. JACKSON, Court of Appeals Judge, sat.