SALT LAKE CHILD AND FAMILY
THERAPY CLINIC, INC.,
Petitioner,

v.

The Honorable J. Dennis FREDERICK,
Respondent.

No. 940175.

Supreme Court of Utah.

Feb. 1, 1995.

Ross C. Anderson, Kate A. Toomey, Salt Lake City, for petitioner.

Colin R. Winchester, Brent M. Johnson, Salt Lake City, for respondent.

H. Wayne Wadsworth, Salt Lake City, for Moriarty.

Denton M. Hatch, Dale J. Lambert, Karra J. Porter, Salt Lake City, for Harper Excavating.

---

*AMENDED OPINION*

RUSSON, Justice:

Pursuant to Utah Rule of Civil Procedure 65B(e)(2)(A), Salt Lake Child and Family Therapy Clinic, Inc. (the Clinic), filed a petition for extraordinary relief against the Honorable J. Dennis Frederick, challenging his denial of its motion for a protective order concerning allegedly privileged information. We grant the petition.

1. Third District Court, Civil No. 910904144PI.

2. Rule 65B provides in pertinent part:
 (a) **Availability of remedy.** Where no other plain, speedy and adequate remedy is available, a person may petition the court for ex-

## I. FACTS

In the underlying case, *Moriarty v. Harper Excavating, Inc.,*[1] Mary Moriarty filed an action against Harper Excavating, Inc. (Harper), alleging that she sustained "severe, permanent physical injuries which have caused her to suffer great physical pain, emotional upset and emotional anguish and permanent partial disability and impairment of bodily functions" as a result of an automobile accident for which Harper is liable. Among other claims, Moriarty asserted that she had received a significant brain injury manifested by memory loss, dizziness, diminished attention span, partial loss of cognitive skills, blurred vision, sensitivity to light, inability to organize, headaches, depression, and other symptoms. Harper sought discovery as to Moriarty's injuries and requested that she execute a release by which her medical records could be obtained. She refused, and Harper moved to compel her to execute a release of any records relating to "the condition of [her] health, observation or treatment, including medical and work histories." The trial court granted Harper's motion, and Moriarty executed the release. Pursuant to the release, Harper sought to acquire from the Clinic all records related to counseling obtained by Moriarty. The Clinic, however, refused to produce such records, arguing that the information was privileged and that such privilege could not be waived under Utah Code Ann. § 58–39–10 (1994). That section provides that "[a]ny communication between the marriage and family therapist and the person treated is privileged and confidential. Its secrecy shall always be preserved and this privilege is not subject to waiver" and then lists four exceptions to this general rule. The Clinic subsequently moved for a protective order, but the trial court denied the same.

The Clinic filed this petition for extraordinary relief pursuant to Utah Rule of Civil Procedure 65B(e)(2)(A),[2] challenging the trial

traordinary relief on any of the grounds set forth in [paragraphs (b), (c), (d), or (e)] . . . .
 . . . .
 (e) **Wrongful use of judicial authority or failure to comply with duty.**
 . . . .

court's denial of the Clinic's motion for a protective order on the ground that the plain language of section 58–39–10 prohibits waiver of the privilege against disclosure of the allegedly privileged information to Harper. Harper responds that (1) section 58–39–10 prohibits waiver of the privilege against disclosure by marriage and family therapists only, not by clients, and (2) the Mental Health Professional Practice Act, Utah Code Ann. §§ 58–60–101 to –406 (Supp.1994), which was passed while this case was pending before this court and which repeals section 58–39–10, should be applied to the facts in this case.

## II. STANDARD OF REVIEW

■ Utah Rule of Civil Procedure 65B(e)(4) provides, "Where the challenged proceedings are judicial in nature, the court's review shall not extend further than to determine whether the respondent has regularly pursued its authority." Since the issue here involves the interpretation and application of a statute, the trial court's legal conclusion is granted no particular deference but is reviewed for correctness. *Ward v. Richfield City,* 798 P.2d 757, 759 (Utah 1990); *State ex rel. Div. of Consumer Protection v. Rio Vista Oil, Ltd.,* 786 P.2d 1343, 1347 (Utah 1990).

## III. ANALYSIS

### A. Mental Health Professional Practice Act

As an initial matter, we address Harper's claim that recent changes to Title 58 of the Utah Code should be applied to the present case. In March 1994, the Utah legislature enacted the Mental Health Professional Practice Act, Utah Code Ann. §§ 58–60–101 to –406 (Supp.1994). This act overhauled various statutes concerning mental health professionals such as clinical social workers, certified social workers, social service workers, and marriage and family therapists. It did so by systematizing previously divergent sections of the code addressing the mental health practices of these professionals into a comprehensive, organized scheme in one

(2) **Grounds for relief.** Appropriate relief may be granted: (A) where an inferior court

chapter. It further repealed Utah Code Ann. § 58–39–10 (1994) and replaced it with a new section, Utah Code Ann. § 58–60–114, effective July 1, 1994, under which the communications between Moriarty and the Clinic would not be subject to privilege in this matter. Harper contends that because the new act became effective prior to disclosure of the allegedly privileged information in the present case, it should be applied here.

■ There is a general presumption under Utah law that statutes are not to be applied retroactively unless there is an express provision to the contrary. *See* Utah Code Ann. § 68–3–3 (stating that "[n]o part of these revised statutes is retroactive, unless expressly so declared"); *National Parks & Conservation Ass'n v. Board of State Lands,* 869 P.2d 909, 912 (Utah 1993) (holding that "[a]s a general rule, amendments to statutes are not retroactive").

Harper makes two arguments to rebut this general presumption. First, it argues that while the communications in question occurred under the old statute, the relevant point in time for the application of the current section 58–60–114 is not the point at which the communication took place, but rather the point at which the communication is to be disclosed. For support of this position, Harper relies upon *Doe v. American National Red Cross,* 790 F.Supp. 590, 591–92 (D.S.C.1992) (holding that "the appropriate time frame ... is when [the interested party] is seeking to gain access" to allegedly privileged information), and *Scott v. McDonald,* 70 F.R.D. 568, 573 (N.D.Ga.1976) (holding that "[t]he applicability and availability of a privilege should be governed by the current law in force at the time of trial and not at the time the alleged confidential communication took place"). Such reliance, however, is misplaced. The issue in both *Doe* and *Scott* concerned the *extension* of a privilege where it had not previously existed, not, as in the present case, the *restriction* of a privilege upon which a party had previously relied. Therefore, unlike the present case, no substantive right to have communications which had been conducted under an expectation of

... has exceeded its jurisdiction or abused its discretion[.]

confidentiality kept private was implicated in either of those two cases. Moreover, both cases involved situations in which the statute allegedly being applied retroactively had been enacted after the communication but before the court action had been commenced. Thus, when the plaintiffs filed suit, they did so under notice that certain potential evidence was subject to privilege. In the instant case, however, the action had been commenced, discovery begun, the protective order applied for, and the denial of that order appealed, all under the previous statute. Clearly, to apply section 58–60–114 to the action at this point would be to do so retroactively.

■ Second, Harper argues that even if section 58–60–114 is being applied retroactively, such application is proper because the privilege created by this section is procedural. Insofar as section 58–60–114 has been designed to keep relevant and otherwise admissible information from being withheld from civil and criminal court proceedings, it is procedural. However, under Utah law, only procedural statutes "which do not enlarge, eliminate, or destroy vested or contractual rights" may be applied retroactively. *Board of Equalization v. Utah State Tax Comm'n ex rel. Benchmark, Inc.*, 864 P.2d 882, 884 (Utah 1993) (quoting *Pilcher v. State*, 663 P.2d 450, 455 (Utah 1983)). Because section 58–60–114 affects Moriarty's vested right to have her communications with the Clinic, conducted under an expectation of confidentiality, kept private, it cannot be applied retroactively.[3] Accordingly, we turn to an analysis of the Clinic's claim of privilege under the former statute, Utah Code Ann. § 58–39–10 (1994).

### B. Section 58–39–10

The Clinic asserts that it is forbidden to produce Moriarty's records, arguing that such information is protected by an unwaivable privilege outlined in the opening paragraph of Utah Code Ann. § 58–39–10 (1994). Harper responds that because the statute is designed to protect clients' rights, the prohibitions against waiver contained therein apply only to marriage and family therapists, not to the clients themselves, and since Moriarty signed a release, disclosure of her records in the present case is permitted.

■ In the interpretation of statutory language, we are guided by the principle that statutes are generally construed according to their plain language. *Brinkerhoff v. Forsyth*, 779 P.2d 685, 686 (Utah 1989); *accord Allisen v. American Legion Post No. 134*, 763 P.2d 806, 809 (Utah 1988). Moreover, "[u]nambiguous language in the statute may not be interpreted to contradict its plain meaning." *Bonham v. Morgan*, 788 P.2d 497, 500 (Utah 1989) (per curiam). Pursuant to these principles, when reviewing a statute, we "assume[ ] that each term in the statute was used advisedly; thus the statutory words are read literally, unless such a reading is unreasonably confused or inoperable." *Savage Indus., Inc. v. Utah State Tax Comm'n*, 811 P.2d 664, 670 (Utah 1991). The reason for such an approach is plain: "We must be guided by the law as it is.... When language is clear and unambiguous, it must be held to mean what it expresses, and no room is left for construction." *Hanchett v. Burbidge*, 59 Utah 127, 135, 202 P. 377, 379–80 (1921).

---

3. We note that such result conforms with this court's practice of narrowly drawing the boundaries of what constitutes a procedural statute that may be applied retroactively. Those statutes which have been applied retroactively have been concerned solely with the judicial processes involved in enforcing an undisputed right. *See, e.g., Board of Equalization v. Utah State Tax Comm'n ex rel. Benchmark*, 864 P.2d 882, 884 (Utah 1993) (statutorily mandated standard of review for formal adjudicative proceedings before state tax commission is procedural); *Pilcher v. State*, 663 P.2d 450, 456 (Utah 1983) (statutes enacted to facilitate collection of previously awarded child support debts is procedural);

*State v. Higgs*, 656 P.2d 998, 1001 (Utah 1982) (statute altering administrative appeals that must be completed before judicial review becomes available is procedural). On the other hand, those statutes which are designed to control judicial processes but which also have some impact on vested rights have been declared nonretroactive. *See, e.g., State v. Abeyta*, 852 P.2d 993, 995 (Utah 1993) (statute limiting time period during which defendant could withdraw guilty plea may not be applied retroactively); *Brunyer v. Salt Lake County*, 551 P.2d 521, 522 (Utah 1976) (statute providing for contribution among joint tort-feasors was not merely remedial, and therefore, nonretroactive).

The statute at issue in the present case, Utah Code Ann. § 58–39–10 (1994), provides:

> Any communication between the marriage and family therapist and the person treated is privileged and confidential. Its secrecy shall always be preserved and this privilege is not subject to waiver, except:
>
> (1) A marriage and family therapist may communicate orally about any person being treated with another member of his profession or of a related profession who is also working with or has worked with the person being treated. However, he may make no written communication with other professional persons, about the communications from the person being treated, unless the person being treated consents in writing.
>
> (2) A marriage and family therapist, to whom a person has been referred by a court or by a conciliation department working under the supervision of a court, may submit to the appropriate court a written evaluation of the prospects or prognosis of a particular marriage without divulging facts or revealing confidential disclosures.
>
> (3) If the marriage and family therapist is a party defendant in a civil, criminal, or disciplinary action arising from that therapy, in which case the privilege is waived, but the waiver is limited to that action.
>
> (4) A marriage and family therapist shall not treat as confidential a communication that reveals the contemplation or commission of a crime.

The plain and unambiguous language of the opening paragraph of section 58–39–10 states that communications such as those in the present case are privileged and confidential, and that such privilege is not subject to waiver, except in four specified circumstances which are not relevant to the present case. In so stating, section 58–39–10 established a unique absolute privilege prohibiting disclosure of communications between marriage and family therapists and their patients which was not granted to other professionals. *Compare* § 58–39–10 *and* § 78–24–8(2) to (4) (addressing privileged communications with attorneys, clergy, and physicians). Section 58–39–10 clearly provided that the privilege protecting communications between marriage and family therapists was not subject to waiver, while section 78–24–8(2) to (4) explicitly states that as to attorneys, clergy, and physicians, such privileges are subject to waiver by the person being counseled or treated.

In *Clausen v. Clausen*, 675 P.2d 562 (Utah 1983), a case in which the client herself called her marriage and family therapist as a witness, this court considered the very statute at issue here. This court unanimously concluded that the nature of the privilege against disclosure provided by section 58–39–10 was absolute absent one of the circumstances set forth in subsections 1 through 4 of the statute, *id.* at 565, and held that it was error for the trial court to allow the marriage and family counselor to testify, even though she had been called as a witness by her client. *Id.*

The dissent points out problems that arise from section 58–39–10 and would interpret the statute to avoid such problems. However, in doing so, the dissent not only ignores the plain language of the statute, but also fails to adequately distinguish *Clausen.* While we agree with the concerns expressed by the dissent, it is not our prerogative to rewrite that section or to question the wisdom, social desirability, or public policy underlying it. *Utah Mfrs.' Ass'n v. Stewart*, 82 Utah 198, 204, 23 P.2d 229, 232 (1933). Indeed, the rationale for section 58–39–10 may well have been the encouragement of free and open conversation between parties and a therapist in a marriage counseling environment with absolute assurance of confidentiality. In any event, if a statute is infirm, "amendments to correct the inequities should be made by the legislature and not by judicial interpretation," *Masich v. United States Smelting, Ref. & Mining Co.*, 113 Utah 101, 126, 191 P.2d 612, 625, *appeal dismissed*, 335 U.S. 866, 69 S.Ct. 138, 93 L.Ed. 411 (1948), and as noted above, such has occurred with respect to the statute at issue here. *See supra* p. 1019. However, given the plain language of section 58–39–10, as well as this court's decision in *Clausen*, we are unable to rewrite that section as the dissent would

have us do. Accordingly, in light of the absolute nature of the privilege in section 58–39–10, it was error for Judge Frederick to deny the Clinic's motion for a protective order.

## IV. CONCLUSION

On the basis of the foregoing, we grant Salt Lake Child and Family Therapy Clinic, Inc.'s petition for extraordinary relief against Judge Frederick and remand this matter for further proceedings consistent with this opinion.

HOWE and DURHAM, JJ., concur.

STEWART, Associate Chief Justice, dissenting:

The majority purports to analyze the statute at issue under the plain meaning rule of statutory construction. While the plain meaning rule is a basic rule of statutory construction, an equally basic rule of statutory construction is that a statute should be construed as a whole, with all of its provisions construed to be harmonious with each other and with the overall legislative objective of the statute. *Utah State Road Comm'n v. Friberg*, 687 P.2d 821, 831 (Utah 1984); *Reagan Outdoor Advertising, Inc. v. Utah Dep't of Transp.*, 589 P.2d 782, 783 (Utah 1979); *see Amax Magnesium Corp. v. Utah State Tax Comm'n*, 796 P.2d 1256, 1258 (Utah 1990).

The majority focuses on the opening paragraph of Utah Code Ann. § 58–39–10 (1994). That section provides:

Any communication between a marriage and family therapist and the person treated is privileged and confidential. Its secrecy shall always be preserved and this privilege is not subject to waiver, except:

(1) A marriage and family therapist may communicate orally about any person being treated with another member of his profession or of a related profession who is also working with or has worked with the person being treated. However, he may make no written communication with other professional persons, about the communications from the person being treated, unless the person being treated consents in writing.

(2) A marriage and family therapist, to whom a person has been referred by a court or by a conciliation department working under the supervision of a court, may submit to the appropriate court a written evaluation of the prospects or prognosis of a particular marriage without divulging facts or revealing confidential disclosures.

(3) If the marriage and family therapist is a party defendant in a civil, criminal, or disciplinary action arising from that therapy, in which case the privilege is waived, but the waiver is limited to that action.

(4) A marriage and family therapist shall not treat as confidential a communication that reveals the contemplation or commission of a crime.

Utah Code Ann. § 58–39–10 (1994).

Reading the statute literally, as the majority does, compels absurd results. If, indeed, "any communication between the marriage and family therapist and the person treated" is privileged except for only the four stated exceptions, as the majority holds, then the conversation between a therapist and a patient in an elevator or at a cocktail party with a number of other people in hearing range would be privileged absolutely, irrespective of the subject matter of the conversation, because such conversations would fall within the literal, plain meaning of the statutory language. Certainly the Legislature did not intend such absurd results. Applying the plain meaning rule in such a fashion as the majority does distorts and seriously undermines the legislative intent. Reading the statute as a whole, however, makes clear the legislative intent and purpose.

The language in the opening paragraph that a communication between a marriage and family therapist and a client shall be held confidential must be read in light of the purpose and language of the entire statute. Contrary to the general rule that a professional may not waive a patient's or a client's privilege, the four subsections establish exceptions allowing a therapist to disclose the contents of communications to third persons.

Subsection (1) allows the therapist to make communications orally to another person who is also "working with or has worked with the person being treated" if the third person is of a "related profession." Subsection (2) allows the therapist to communicate confidential communications to a court if the client was referred by the court for a written evaluation with respect to the prospects for prognosis of a "particular marriage." Subsection (3) provides that the therapist who is a party defendant in a civil, criminal, or disciplinary action arising from the therapy may testify with respect to communications held with the client in the course of litigation. Subsection (4) permits the therapist to disclose a communication intended to be confidential by a client if it reveals the "contemplation or commission of a crime."

Every stated exception to the confidentiality established by the opening paragraph is an exception for a communication made by the therapist to a third person. It is absurd, however, to construe the statute to mean that a client cannot disclose to third persons communications he or she made to a therapist. If that were correct, a client would never be able to disclose the content of prior communications with a therapist to a new therapist in the course of therapy. Nor could a client disclose such communications to a lawyer for the purpose of obtaining legal redress for malpractice by a therapist, even though the statute itself permits the therapist to disclose such communications in case of a malpractice action. Nor, indeed, could a client disclose a communication to a spouse when attempting a marital reconciliation.

In truth, the marriage and family therapist privilege is like every other evidentiary privilege that the courts deal with on a frequent basis. The person making a confidential communication has always had the unfettered right to speak freely about any such communication, even though the professional who received the confidential communication had no such concomitant right. Suggesting that a client, a patient, or a parishioner cannot disclose his or her communications to a therapist, a physician, an attorney, personal friends and family, or to anyone else is not

only highly novel, but would raise serious First Amendment issues.

The majority opinion notwithstanding, *Clausen v. Clausen*, 675 P.2d 562 (Utah 1983), simply does not govern this case. In *Clausen*, the issue had to do with the division of the marital assets between two persons who had divorced. Over the ex-husband's objection, a marriage and family counselor who had counseled the husband and wife prior to their separation was allowed to testify regarding the ex-wife's emotional state during counseling. This Court ruled that it was error for the trial court to have admitted the testimony of the marriage and family counselor. *Id.* at 565.

That ruling is patently distinguishable from the present case. Marriage and family counselors often counsel husbands and wives together during the same session. The confidentiality necessary to make such counseling effective must perforce attach to the communications of both the husband and the wife. Obviously, therefore, one spouse cannot be allowed to waive the privilege in a judicial proceeding involving the other spouse with respect to such communications. That was the case in *Clausen*. The Court held that an ex-spouse could not waive the privilege to obtain damaging admissions made by a former spouse in a counseling session. Had the Court ruled otherwise, marriage counseling of spouses on the verge of a divorce would provide a trap for the unwary and a deceitful strategy for a disingenuous spouse.

Here, Mary Moriarty seeks disclosure of communications she made concerning herself to a marriage and family counselor. There is no indication whatsoever that those communications were made in the presence of either a spouse or any other third person who had a legitimate interest in barring disclosure, and no person with a legitimate interest objects to the disclosure of the communication. The Clinic, which has no interest whatsoever in the confidentiality of those communications, seeks to bar the disclosure. Had the same disclosure been made to a licensed clinical social worker or a psychologist who also does marriage counseling, there would be no doubt that a court could compel such a per-

**1024**

son to disclose the content of the communication.

By bringing a personal injury action, Mary Moriarty placed her physical and mental condition in evidence and was deemed under the law to have waived her privilege with respect to her physical and mental condition insofar as it was pertinent to her action for damages. For that reason, the trial judge directed her to execute a release so that her records could be obtained for Harper Excavating, but the Salt Lake Child and Family Therapy Clinic, Inc., refused to produce the record. Allowing the Clinic to hold the information sought confidential does not benefit the Clinic in any way, and it gives Mary Moriarty an unfair advantage in her litigation.

Because the Legislature repealed Utah Code Ann. § 58–39–10 and replaced it with a new section, Utah Code Ann. § 58–60–114, effective July 1, 1994, this case has no significance beyond the merits of the dispute between the parties here. But the new statutory revision makes clear that there is nothing unique about the marriage and family counselors' privilege and that it should be applied as similar privileges are applied. Construing the old provision as the majority does not only fails to construe the statute correctly, but it will prejudice Harper Excavating in presenting a true and accurate picture of relevant facts upon which this dispute should be decided.

The Legislature expects the courts to apply statutes, which necessarily are written in generalities, with some degree of common sense to particular situations. The Legislature does not expect the courts to effectuate what they think is good policy, but rather to enforce legislative intent. In the end, the only truly reliable canon of statutory construction is to ascertain and apply the law the Legislature intended or would have intended had it turned its mind to the issue. Incanting the word "plain meaning" while ignoring other evidence of legislative purpose and intent does not serve that purpose, as this case illustrates. Significantly, the majority does not even suggest a rational policy that sustains its plain meaning analysis. Indeed, it is totally unconcerned about the irra-

tionality of the result and the potential constitutional issues it raises.

ZIMMERMAN, C.J., concurs in the dissenting opinion of STEWART, Associate C.J.