Cindy GUTIERREZ, Petitioner,

v.

The Honorable Tyrone E. MEDLEY, Respondent.

Melissa Gutierrez, Petitioner,

v.

The Honorable Tyrone E. Medley, Respondent.

State of Utah, Plaintiff and Appellee,

v.

Johnny Augusti Gutierrez, et al., Defendants and Appellant.

Nos. 970472, 970473 and 970476.

Supreme Court of Utah.

Dec. 29, 1998.

John D. O'Connell, Jr., Salt Lake City, for Cindy Gutierrez.

Rebecca C. Hyde, Salt Lake City, for Melissa Gutierrez.

Brent M. Johnson, Salt Lake City, for Judge Medley.

Jan Graham, Att'y Gen., Christine Soltis, Asst. Att'y Gen., E. Neal Gunnarson, Barbara J. Byrne, Bel–Ami De Montreux, Salt Lake City, for the State.

James C. Bradshaw, Salt Lake City, for Johnny Gutierrez.

RUSSON, Justice:

Johnny Gutierrez, his wife Cindy Gutierrez, and his daughter Melissa Gutierrez challenge the Third District Court's order denying a motion to quash subpoenas issued to Cindy and Melissa Gutierrez pursuant to Utah Code Ann. § 77–22–2. We reverse and remand.

### FACTS

On or about August 5, 1996, Roberto Huerta was shot and killed during a gun battle at the home of defendant Johnny Gutierrez. Both Cindy and Melissa Gutierrez were at the home at the time of the shooting. Both were interviewed briefly at the scene and were told that a homicide detective would contact them later to obtain a statement concerning their observations. When a detective later contacted them, Cindy and Melissa refused to cooperate.

On August 7, 1996, a criminal information was filed against Johnny Gutierrez and several others,[1] charging them with murder.

---

1. The other defendants are Lupe Najera, Gilbert Najera, and Steven Najera.

Following a preliminary hearing, defendants were bound over to stand trial.

On August 15, 1997, one year after charges had been brought and one week before the scheduled trial, the district court issued an order, pursuant to Utah Code Ann. §§ 77–22–1 to –5 (the "Subpoena Powers Act"), permitting the State to subpoena Cindy and Melissa Gutierrez to provide sworn statements "to aid the State in its pre-trial investigation of the killing of Roberto Huerta." Johnny Gutierrez moved to quash the subpoenas on the ground that the Subpoena Powers Act did not permit such subpoenas after the filing of formal criminal charges. Cindy and Melissa Gutierrez also opposed the subpoenas. On September 18, 1997, the court denied the motion to quash, ruling that the Subpoena Powers Act was not limited to the period of investigation preceding the filing of criminal charges but could be utilized during any period of the State's pretrial investigation of a criminal case. In support of its ruling, the court stated that the language of the Subpoena Powers Act did not specifically limit its use to only the period of investigation preceding the filing of charges. The court further supported its decision by citing to Utah Code Ann. § 77–22b–1, entitled **"Immunity granted to witness."** That section states in part:

> A witness who refuses, or is likely to refuse, on the basis of his privilege against self-incrimination to testify or provide evidence or information *in a criminal investigation, including* a grand jury investigation or *prosecution of a criminal case,* ... may be compelled to testify or provide evidence or information by any of the following, after being granted use immunity....

Utah Code Ann. § 77–22b–1(1)(a) (Supp. 1998) (emphasis added). The district court reasoned that because section 77–22b–1 describes a criminal investigation to include a criminal prosecution, it followed that a criminal investigation under the Subpoena Powers Act included that period of investigation during prosecution, and thus the subpoena power could be used after the filing of criminal charges.

Johnny Gutierrez appeals the denial of his motion to quash the subpoenas, and Cindy and Melissa Gutierrez petition for extraordinary relief against the Honorable Tyrone E. Medley, also challenging the denial of the motion. The Gutierrezes argue that the language of the Subpoena Powers Act, its legislative history, and important policy considerations all compel the conclusion that the Act cannot be used after criminal charges have been filed. The Gutierrezes also argue that the subpoenas should be quashed because the State did not request or obtain authorization from the district court to conduct a Subpoena Powers Act investigation, as is required. *See* Utah Code Ann. § 77–22–2(1) (1995).

The State responds that the Subpoena Powers Act is not limited to the time prior to the filing of charges, but can be used during any period of the State's pretrial investigation. The State also argues that the procedures of the Act were complied with because the district court found that there was good cause for the investigation.

Thus, the principal issue before us is whether the Subpoena Powers Act can be used to subpoena witnesses after formal criminal charges have been filed. Because we hold that the Subpoena Powers Act cannot be used after charges have been filed and we reverse the district court on that ground, we need not consider whether the State complied with the procedures of the Act in this case.[2]

### STANDARD OF REVIEW

■ The proper interpretation and application of a statute is a question of law which

---

**2.** The State also argues that defendant Johnny Gutierrez lacks standing to challenge the subpoenas inasmuch as he is not the subject of the subpoena and he has not otherwise put forth evidence that an exception in his case should apply. *See State v. Thompson,* 810 P.2d 415 (Utah 1991); *Society of Prof. Journalists v. Bullock,* 743 P.2d 1166 (Utah 1987). Because the petitions of Cindy and Melissa Gutierrez raise the same issue Johnny Gutierrez raises, i.e., whether the Subpoena Powers Act can be used after charges have been filed, we will consider the merits of the issue without addressing whether, under the facts of this case, Johnny Gutierrez lacks standing.

we review for correctness, affording no deference to the district court's legal conclusion. *See Salt Lake Therapy Clinic v. Frederick*, 890 P.2d 1017, 1019 (Utah 1995).

## ANALYSIS

Upon a showing of good cause and the approval of the district court, the Subpoena Powers Act permits the attorney general, the county attorney, or the district attorney (the "state's attorneys") to conduct a criminal investigation. Utah Code Ann. § 77-22-2(1)(a). Once such an investigation is approved by the court, the state's attorneys may subpoena witnesses and compel their testimony and the production of physical evidence. *Id.* § 77-22-2(2)(a). The state's attorneys are required to disclose, among other things, that the subpoena is issued in aid of a criminal investigation, the general subject matter of the investigation, that the witness has the privilege to refuse to answer any question that may result in self-incrimination, and that the witness has the right to have counsel present during interrogation. *Id.* § 77-22-2(3) & (4). If the witness is suspected of committing the crime that is under investigation, the state's attorneys must inform the witness of that status, as well as the nature of the charges under consideration against him. *Id.* § 77-22-2(5). Furthermore, upon showing a reasonable likelihood that the public release of the identity of the witness or the substance of the evidence obtained would threaten harm to a person or impede the investigation, the court may order the identity of the witness and the evidence obtained to be kept secret. The court may also order the witness, under appropriate circumstances, not to disclose the substance of his or her testimony to others. *Id.* § 77-22-2(7).

While the Gutierrezes and the State do not dispute that the state's attorneys can conduct an investigation under the Act in which they have the power to subpoena witnesses and compel their testimony, they do dispute when that power may be exercised. The Gutierrezes claim that the subpoena power can be used only prior to the filing of criminal charges. Thus, according to the Gutierrezes, an investigation under the Act is limited to the preindictment investigation. The State, however, draws no distinction between an investigation prior to the filing of charges and an investigation after the filing of charges. Thus, the State claims that when it is authorized to conduct a "criminal investigation" under the Act it may use the subpoena power any time during its pretrial investigation.

■ Therefore, we need to determine when the subpoena power can be used. In other words, we need to decide when a criminal investigation, for purposes of the Subpoena Powers Act, begins and ends. In interpreting a statutory act, we seek to give effect to the intent of the legislature in light of the purpose the act was meant to achieve. *See Mariemont v. White City Water Improvement Dist.*, 958 P.2d 222, 224 (Utah 1998). In doing so, we look to the plain language of the act and consider the act in its entirety, " 'harmoniz[ing] its provisions in accordance with the legislative intent and purpose.' " *Id.* at 225 (citations omitted). If there is ambiguity in the act's plain language, "we then seek guidance from the legislative history and relevant policy considerations." *Id.* at 224-25 (citations omitted).

■ We conclude that the Subpoena Powers Act is ambiguous as to when the subpoena power may be used. On the one hand, the legislature sought to "grant subpoena powers in aid of criminal investigations." Utah Code ·Ann.· § 77-22-1. As the State points out, this phrase is not specifically limited to the investigation prior to the filing of charges, and it is axiomatic that the State investigates criminal cases both before and after charges have been filed. On the other hand, the Act when read as a whole seems to suggest that a criminal investigation, for purposes of the Act, ends with the filing of criminal charges. For example, the Act states in part that (1) it is necessary "to provide a method of keeping information gained from investigations secret both to protect the innocent and to prevent criminal suspects from having access to information *prior to prosecution*," *id.* § 77-22-1 (emphasis added); (2) if the state's attorneys have evidence that the particular witness "has committed a crime that is under investiga-

tion, [they] shall inform that witness in person prior to interrogation of that witness's *target status* and of the nature of the *charges under consideration* against him," *id.* § 77–22–2(5) (emphasis added); and (3) "[t]he subpoena need not disclose the names of *possible defendants,*" *id.* § 77–22–2(6)(a) (emphasis added).

The use of language such as "prior to prosecution," "target status," "charges under consideration," and "possible defendants," implies that the Act is to be used prior to formal charges. In our prior cases, we have taken this view, although we have never directly ruled on the issue. *See Parsons v. Barnes,* 871 P.2d 516, 519 n. 3 (Utah 1994) (emphasizing that "[a] county prosecutor proceeds under section 77–22–2 *prior* to commencing prosecution of a defendant or defendants"); *In re Criminal Investigation,* 754 P.2d 633, 652 (Utah 1988) (stating that the Act is intended to "enable the state's attorneys to gather sufficient evidence with which to initiate formal adjudicative criminal proceedings"). *But see id.* at 666 (Stewart, Assoc.C.J., dissenting) (stating that "the Act allows prosecutors to engage in criminal discovery even after a formal charge has been filed"). Having found the Act ambiguous as to when the state's attorneys may use the subpoena power, we look to the legislative history to infer the legislative intent.

The Subpoena Powers Act was sponsored by Representative M. Byron Fisher in 1971 and was enacted that same year. *See* Utah Code Ann. §§ 77–45–19 to –21 (1971). The Act was then recodified in 1980 as Utah Code Ann. §§ 77–22–1 to –3. In 1988, this court addressed the constitutionality of the Act. *See In re Criminal Investigation,* 754 P.2d 633 (Utah 1988). In that case, the Act was upheld as constitutional, but only after this court interpreted the Act as "incorporating a number of substantive and procedural safeguards." *Id.* at 636. In 1989, the legislature amended the Act to specifically include those safeguards.

During debate of the proposed Act in the House of Representatives in 1971, Representative Fisher stated:

The purpose of the bill is to permit the investigation of criminal activities and suspect crimes by [the state's attorneys] by ... allowing them to subpoena witnesses and to bring people before them *for the purpose of obtaining information for the filing of criminal complaint. This action would take place prior to the filing of complaints and would not necessarily come about in the filing of a criminal complaint or culminate in that activity.*

Floor Debate, Statement of Rep. M. Byron Fisher, 39th Utah Leg., Gen. Sess. (Feb. 17, 1971) (emphasis added). Later that same day, Representative Fisher also stated, "With the subpoena power, [the state's attorneys] could obtain ... evidence and if it showed what is believed is occurring, *then the action could be brought and a complaint filed.*" *Id.* (emphasis added). On reintroducing the bill the next day to continue the debate, Representative Fisher stated that the proposed Act "is the subpoena powers granting to the [state's attorneys] an opportunity to obtain evidence by investigation *without the filing of complaint for the determination of whether ... criminal complaints should be filed.*" Floor Debate, Statement of Rep. M. Byron Fisher, 39th Utah Leg., Gen. Sess. (Feb. 18, 1971) (emphasis added). As this history makes clear, the subpoena power was intended to be used prior to the filing of criminal charges.

This conclusion is further supported by the legislature's amendments in 1989. Those amendments constituted a significant overhauling of the Act, which incorporated the substantive and procedural safeguards read into the Act in *In re Criminal Investigation.* In that case, this court also rejected the claims that the Act violated a defendant's constitutional rights to present evidence and cross-examine witnesses. In doing so, this court relied heavily on its view that investigations under the Act are "preliminary investigative proceedings" which "only lead[ ] to the filing of criminal charges." *In re Criminal Investigation,* 754 P.2d at 652. Thus, at the time of the 1989 amendments, the legislature knew that this court viewed the use of the subpoena power as occurring only prior to the filing of formal charges. Because the legislature did not amend the Act to specifically state that the subpoena power could be

used after the filing of charges, we conclude that this court's view that it could not be so used is consistent with legislative intent. *See Christensen v. Industrial Comm'n*, 642 P.2d 755, 756–57 (Utah 1982) ("A well-established canon of statutory construction provides that where a legislature amends a portion of a statute but leaves other portions unamended ... the legislature is presumed to have been satisfied with prior judicial constructions of the unchanged portions of the statute and to have adopted them as consistent with its own intent.").[3]

## CONCLUSION

In view of the foregoing, we hold that the Subpoena Powers Act can be used by the State only prior to the filing of formal criminal charges. We therefore grant the petitions of Cindy and Melissa Gutierrez for extraordinary relief and order the district court to quash the subpoenas.

Chief Justice HOWE, Associate Chief Justice DURHAM, and Justice ZIMMERMAN concur in Justice RUSSON's opinion.

STEWART, Justice, concurring:

I concur with the majority in holding that the Subpoena Powers Act does not permit prosecutors to take discovery depositions after the filing of an information. I submit that a contrary construction of the Act would raise significant due process issues.

Furthermore, given the many recent revelations of oppressive prosecutorial abuses by various federal special prosecutors under the federal Independent Counsel Act,[1] which vests special prosecutors with broad inquisitional powers directed at the person, I again reiterate the objections I stated with respect to the Utah Act and this Court's opinion in *In re Criminal Investigation*, 754 P.2d 633, 659–66 (Utah 1988) (Stewart, Assoc.C.J., dissenting). That opinion sustained the consti-

tutionality of the Act with respect to its preinformation ex parte inquisitorial procedures. I pointed out in that dissent the vast potential, if not temptation, for prosecutors—whether well-meaning, unduly zealous, or partisan—to crush personal liberties and rights of privacy. I repeat what I stated in my dissent in *In re Criminal Investigation*:

> I believe the Subpoena Powers Act (the "Act") is unconstitutional on its face. The United States Supreme Court has observed, in language which I believe is applicable to this Act, "A general, roving, offensive, inquisitorial, compulsory investigation, conducted by a commission without any allegations, upon no fixed principles, and governed by no rules of law, or of evidence, and no restrictions except its own will, or caprice, is unknown to our constitution and laws; and such an inquisition would be destructive to the rights of the citizen, and an intolerable tyranny." *Jones v. S.E.C.*, 298 U.S. 1, 27, 56 S.Ct. 654, 662, 80 L.Ed. 1015 (1935) (quoting *In re Pacific Ry. Comm'n*, 32 F. 241 (C.C.Cal. 1887)). This language applies in essential respects to the powers the Legislature has sought to confer on county prosecutors and the Attorney General. The Subpoena Powers Act vastly extends the compulsory inquisitorial power of state and county prosecutors over both citizens and government officials. Anglo–American history is fraught with examples of abuses of similar powers by government officials.

754 P.2d at 659–60.

---

**3.** Furthermore, we note that had the legislature clearly stated that the Act applied after the filing of charges without adding other substantive provisions permitting a defendant to present evidence, confront the witness, and engage in reciprocal discovery, the Act might have then been of questionable constitutional validity. *See In re Criminal Investigation*, 754 P.2d at 650–52; *id.* at

666 (Stewart, Assoc.C.J., dissenting); *Wardius v. Oregon*, 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973).

**1.** Independent Counsel Reauthorization Act of 1994, 28 U.S.C. §§ 591–99.