2011 UT App 139

Amy B. BOTT, Plaintiff and Appellee,

v.

Jessie Lee OSBURN, Defendant and Appellant.

No. 20100232–CA.

Court of Appeals of Utah.

May 5, 2011.

See also, 2011 WL 1706522

Scott H. York, Salt Lake City, for Appellant.

Amy B. Bott, Provo, Appellee Pro Se.

Before Judges McHUGH, THORNE, and ROTH.

OPINION

McHUGH, Associate Presiding Judge:

¶ 1 Jessie Lee Osburn (Girlfriend) appeals from the trial court's order entering a civil stalking injunction against her and in favor of Amy B. Bott (Wife), pursuant to Utah Code section 77–3a–101 (civil stalking statute), *see* Utah Code Ann. § 77–3a–101 (2008). Specifically, Girlfriend challenges the trial court's

underlying determination that she committed the criminal offense of stalking as defined in Utah Code section 76–5–106.5 (criminal stalking statute), *see* Utah Code Ann. § 76–5–106.5 (2008), a prerequisite for the issuance of a civil stalking injunction under the civil stalking statute. We affirm.

## BACKGROUND[1]

¶ 2 In June of 2008, Wife discovered that Girlfriend was having an affair with Wife's husband, Shane Bott (Husband). Not surprisingly, this discovery resulted in discord between the two women. That August, Wife and Girlfriend filed petitions for civil stalking injunctions against each other, but after Husband returned home in an attempt to reconcile with Wife, each woman agreed to dismiss her petition against the other.

¶ 3 On December 7, 2009, Wife learned that Husband and Girlfriend had resumed their affair. That same day, Wife placed a phone call to Girlfriend during which Girlfriend told Wife that she intended to "shoot [Wife's] ass" with a gun Husband had allegedly purchased for her to use to deal with Wife's harassment. On December 13, 2009, Wife called Husband on his cell phone. During the call, Girlfriend took the phone from Husband and again stated that she intended to shoot Wife.

¶ 4 On January 19, 2010, Wife filed a petition for a civil stalking injunction against Girlfriend; the trial court granted a temporary injunction the next day.[2] The trial court then held a hearing on the matter and granted a civil stalking injunction in favor of Wife. The trial court found that Girlfriend

made two verbal threats directed at Wife, which "would cause a reasonable person to be afraid of [Girlfriend] and cause [Wife] great emotional distress." Girlfriend now appeals.

## ISSUES AND STANDARD OF REVIEW

¶ 5 Girlfriend argues that the trial court made several errors in its interpretation and application of both the civil and criminal stalking statutes. *See* Utah Code Ann. § 77–3a–101; Utah Code Ann. § 76–5–106.5. To begin, Girlfriend maintains that the trial court failed to find that all of the required elements of the criminal stalking statute were met. She then argues that the lack of specific factual findings prevents meaningful appellate review and that the findings that the trial court did make are against the clear weight of the evidence.[3] *See* Utah Code Ann. § 76–5–106.5. Girlfriend also asserts that the trial court did not consider the totality of the circumstances when deciding whether Girlfriend engaged in a "course of conduct" that violated the criminal stalking statute. *See id.* § 76–5–106.5(b). In addition, Girlfriend argues that the trial court misinterpreted the criminal stalking statute by ignoring the relevant standards for "emotional distress" and the definition of "reasonable person." *See id.* § 76–5–106.5(1)(d)–(e). "The proper interpretation and application of a statute is a question of law which we review for correctness, affording no deference to the district court's legal conclusions." *Ellison v. Stam*, 2006 UT App 150, ¶ 16, 136 P.3d 1242 (quoting *Gutierrez v. Medley*, 972 P.2d 913, 914–15 (Utah 1998)).

---

1. We recite the facts as found by the trial court.

2. The appeal of Girlfriend's petition against Wife for a civil stalking injunction is also before us. *See Osburn v. Bott*, 2011 UT App 138, 257 P.3d 1028.

3. However, we cannot find and Girlfriend has not directed us to any place in the record where she raised the inadequacy of the detail of the findings of fact with the trial court. Consequently, Girlfriend's argument is not preserved. *See 438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 56, 99 P.3d 801. Furthermore, Girlfriend did not meet her marshaling burden with respect to her

challenge to the sufficiency of the evidence; instead she attacked the trial court's determination that Wife was more credible than Girlfriend. *See generally Ostermiller v. Ostermiller*, 2010 UT 43, ¶ 20, 233 P.3d 489 ("To challenge a factual finding, 'an appellant must first marshal all the evidence in support of the finding and then demonstrate that the evidence is legally insufficient to support the finding even when viewing it in the light most favorable to the court below.'" (additional internal quotation marks omitted) (quoting *Chen v. Stewart*, 2004 UT 82, ¶ 76, 100 P.3d 1177)). Therefore, we decline to address either of these issues further.

## ANALYSIS

### I. The Trial Court Did Not Err in Its Application of the Criminal Stalking Statute.

#### A. The Elements of a Civil Stalking Injunction.

¶ 6 Under the civil stalking statute a trial court may enter a civil stalking injunction upon finding that "an offense of stalking has occurred." *See* Utah Code Ann. § 77-3a–101(5) (2008). " '[S]talking' means the crime of stalking as defined in [the criminal stalking statute]." *Id.* § 77–3a–101(1). In 2008, the Utah Legislature made several substantive amendments to the criminal stalking statute. *See* Utah Code Ann. § 76–5–106.5 amend. notes (2008). The criminal stalking statute now provides,

> (2) A person is guilty of stalking who intentionally or knowingly engages in a course of conduct directed at a specific person and knows or should know that the course of conduct would cause a reasonable person:
>
>> (a) to fear for the person's own safety or the safety of a third person; or
>>
>> (b) to suffer emotional distress.

*Id.* § 76–5–106.5(2). The new version of the criminal stalking statute includes definitions for terms that had not been previously defined by the legislature and also modifies certain definitions included in the prior version of the statute.[4] For example, the definition of "[c]ourse of conduct" has been revised and is now defined in relevant part as "two or more acts directed at or toward a specific person, including . . . acts in which the actor . . . threatens . . . a person . . . (A) directly, indirectly, or through any third party; and (B) by any action, method, device, or means."

*Id.* § 76–5–106.5(1)(b)(i)(A)–(B). Further, the previously undefined term "[e]motional distress" has now been defined by the legislature as "significant mental or psychological suffering, whether or not medical or other professional treatment or counseling is required," *id.* § 76–5–106.5(1)(d), and the term "[r]easonable person" has now been defined as "a reasonable person in the victim's circumstances," *id.* § 76–5–106.5(1)(e).

¶ 7 Based on the language of the 2003 version of the criminal stalking statute, the supreme court in *Towner v. Ridgway*, 2008 UT 23, 182 P.3d 347, delineated three elements that the trial court must find to enter a civil stalking injunction: (1) "the alleged stalker intentionally or knowingly engaged in a course of conduct that would cause a reasonable person to fear bodily injury or suffer emotional distress"; (2) "the accused stalker had or should have had knowledge that the victim of his stalking would fear bodily injury or suffer emotional distress"; and (3) "the victim actually feared bodily injury or suffered emotional distress as a result of the accused stalker's conduct." *Id.* ¶¶ 14–15 (internal quotation marks omitted). Girlfriend claims that a stalking injunction was not appropriate here because Wife did not prove that she actually feared bodily injury as a result of Girlfriend's threats. However, Girlfriend's assertion ignores the fact that the stalking statute was amended in 2008, after the supreme court decided *Towner*. *See* Utah Code Ann. § 76–5–106.5 amend. notes (2008). The 2008 version of the statute, which is relevant here, omits the language that stated that a person commits stalking "whose conduct: (i) induces fear in the specific person of bodily injury to himself or a member of his immediate family; or (ii)

---

4. Before the 2008 amendments, the criminal stalking statute provided,

> (2) A person is guilty of stalking who:
>> (a) intentionally or knowingly engages in a course of conduct directed at a specific person that would cause a reasonable person:
>>> (i) to fear bodily injury to himself or a member of his immediate family; or
>>> (ii) to suffer emotional distress to himself or a member of his immediate family;
>> (b) has knowledge or should have knowledge that the specific person:
>>> (i) will be placed in reasonable fear of bodily injury to himself or a member of his immediate family; or
>>> (ii) will suffer emotional distress or a member of his immediate family will suffer emotional distress; and
>> (c) whose conduct:
>>> (i) induces fear in the specific person of bodily injury to himself or a member of his immediate family; or
>>> (ii) causes emotional distress in the specific person or a member of his immediate family.
>
> Utah Code Ann. § 76–5–106.5(2) (2003).

causes emotional distress in the specific person or a member of his immediate family." *Id.* § 76-5-106.5(2)(c) (2003). Thus, we must determine whether *Towner* still accurately identifies the elements the trial court must find before entering a stalking injunction under the 2008 version of the statute.

¶ 8 The "goal when confronted with questions of statutory interpretation 'is to evince the true intent and purpose of the Legislature.'" *Anderson v. Bell,* 2010 UT 47, ¶ 9, 234 P.3d 1147 (quoting *Duke v. Graham,* 2007 UT 31, ¶ 16, 158 P.3d 540). "It is axiomatic that the best evidence of legislative intent is 'the plain language of the statute itself.'" *Id.* (quoting *Duke,* 2007 UT 31, ¶ 16, 158 P.3d 540). Looking to the plain language of the 2008 version of the criminal stalking statute, we conclude that although the trial court must still find that the alleged stalker had the requisite intent to engage in a course of conduct that he or she knows or should know would cause a reasonable person to fear or suffer emotional distress, there is no requirement that the trial court also find that the victim was actually afraid or distressed. *See* Utah Code Ann. § 76-5-106.5(2) (2008); *see also Gohler v. Wood,* 919 P.2d 561, 565-66 (Utah 1996) (holding that where express language of statute did not include an actual reliance element, court will not add one). Thus, the statute is plain on its face and no further analysis is necessary to discern the legislature's intent. *See Harold Selman, Inc. v. Box Elder Cnty.,* 2011 UT 18, ¶ 18, 251 P.3d 804 ("When the plain meaning of the statute can be discerned from its language, no other interpretative tools are needed." (internal quotation marks omitted)).

¶ 9 Further, even if the language of the criminal stalking statute left us with doubt as to the current elements of stalking, the fact that the legislature deleted the language imposing a requirement that the defendant's conduct actually induce fear or cause emotional distress "'can mean nothing but that the legislature's purpose deliberately was to remove'" the requirement. *See Sindt v. Retirement Bd.,* 2007 UT 16, ¶ 13, 157 P.3d 797 (quoting *State v. Delmotte,* 665 P.2d 1314, 1315 (Utah 1983)). When the legislature undertakes to amend a statute, it indicates a legislative intent "to change the law." 1A Norman J. Singer, *Sutherland Statutory Construction,* § 22.30 (6th ed. 2002) *quoted in Sindt,* 2007 UT 16, ¶ 13, 157 P.3d 797. The omission of the subject language here shows a legislative purpose to eliminate proof of the victim's actual fear or actual distress as an element of stalking.

¶ 10 Finally, our interpretation of the current statutory language is consistent with the anti-stalking code promulgated by the National Center for Victims of Crime, *see* National Ctr. for Victims of Crime, *The Model Stalking Code Revisited* (2007), upon which the revised version of the criminal stalking statute is modeled, *see* Recordings of Utah House Floor Debates, H.B. 493, 57th Leg., Gen. Sess. (Feb. 29, 2008); Recordings of Utah Senate Floor Debates, H.B. 493, 57th Leg., Gen. Sess. (Mar. 5, 2008); *cf. Regional Sales Agency, Inc. v. Reichert,* 830 P.2d 252, 255-56 (Utah 1992) (using commentary to the Model Code of Judicial Conduct to interpret similar provision of the Utah Code of Judicial Conduct); *State v. Bush,* 2001 UT App 10, ¶ 15, 47 P.3d 69 (using commentary to the Model Penal Code to interpret a similar Utah criminal statute). With regard to the actual fear requirement of criminal stalking, the commentary to the model code states,

> The updated [model code] recommends that states utilize a 'reasonable person' standard of fear instead of an 'actual fear' standard, and that this standard be interpreted to mean 'a reasonable person in the victim's circumstances.'
>
> . . . .
>
> . . . *The updated model stalking code drafters rejected the subjective 'actual fear' standard because it places an unnecessary burden on prosecutors and victims, requiring prosecutors to prove that the victim actually was in fear and forcing the victim to have to justify his or her fear in the presence of the perpetrator.*

National Ctr. for Victims of Crime, *The Model Stalking Code Revisited,* cmt. at 34-37 (2007) (emphasis added).

¶ 11 Therefore, we hold that the trial court properly limited its inquiry to whether Wife had proven that (1) Girlfriend "intentionally or knowingly engage[d] in a course of con-

duct directed at [Wife]," and (2) Girlfriend "[knew] or should [have known] that the course of conduct would cause a reasonable person" fear or emotional distress. *See* Utah Code Ann. § 76-5-106.5(2). By finding that, on two separate occasions, Girlfriend threatened Wife[5] under circumstances that would cause a reasonable person to fear for her personal safety and suffer emotional distress, *see id.* § 76-5-106.5(2), the trial court made the findings necessary to support its conclusion that a stalking injunction should be entered against Girlfriend.

**B. The Trial Court Did Not Err in Its Interpretation of "Course of Conduct," "Reasonable Person," or "Emotional Distress."**

¶ 12 Girlfriend next argues that the trial court did not properly apply the definitions provided by the criminal stalking statute. First, she contends that the trial court failed to consider the totality of the circumstances when deciding whether she engaged in a "[c]ourse of conduct." Girlfriend's primary argument is that because the trial court found that Girlfriend's threats were directed at Wife, it must not have considered that Girlfriend did not initiate the phone calls during which the threats were made. However, the premise of Girlfriend's argument has previously been rejected by this court in the analogous context of a petition for a protective order.

¶ 13 In *Martin v. Colonna*, 2009 UT App 227, 217 P.3d 1147, an adult daughter sought a protective order against her father based, in part, upon threats made by the father during a telephone conversation with the daughter. *See id.* ¶ 6. In response, the father argued that a protective order could not be granted because the threats were made during an inadvertent conversation when his daughter unexpectedly answered the telephone at her mother's house. *See id.* ¶ 12. The trial court agreed with the father and denied his daughter's petition on the grounds that the father had not "intentional-

ly sought [the daughter] out and threatened her." *Id.* (internal quotation marks omitted). On appeal, this court reversed, determining that the inadvertence of the conversation was an inappropriate consideration. *See id.* ¶ 13. Instead, we explained that the proper inquiry was whether the father intentionally threatened his daughter under circumstances satisfying the elements needed to support a protective order, irrespective of whether the father intended to call his daughter. *See id.*

¶ 14 As in *Martin*, whether Girlfriend "sought [Wife] out and threatened her" is not an appropriate consideration here. *See id.* ¶ 12. Whatever circumstances resulted in the communications between Wife and Girlfriend,[6] the trial court found that Girlfriend used the opportunity on two occasions to threaten Wife under circumstances that would cause a reasonable person to fear for her personal safety or to suffer emotional distress. Moreover, whereas the father in *Martin* was surprised to be speaking with his daughter when he called his former wife, Girlfriend knew that Wife was on the line when she took Husband's cell phone and threatened to shoot Wife for the second time. However, even if we concluded that Girlfriend did not initiate either conversation, we agree with the trial court that this fact is not determinative of whether the threats made by Girlfriend were directed at Wife.

¶ 15 Nor are we convinced that, as Girlfriend suggests, the trial court failed to consider her conduct "cumulatively in light of all the facts and circumstances of the case." *See Ellison v. Stam*, 2006 UT App 150, ¶ 38, 136 P.3d 1242. The trial court explained that in reaching its decision, it considered the relationship between Wife and Girlfriend, the fact that there had been "intense communication [that had] gone on for an extended period of time," and "the anger and frustration [that had] gone on between [Wife and Girlfriend] over this affair." Consequently, we are not convinced that the trial court misapprehended or failed to apply the cumulative

---

5. Threatening a person is a prohibited "course of conduct." *See* Utah Code Ann. § 76-5-106.5(1)(b)(i) (2008).

6. Likewise, the fact that the trial court did not consider Wife's questionable conduct directed at Girlfriend as a justification for the threats does not establish that the trial court misapplied the statutory definitions.

analysis used to examine an alleged stalker's conduct.

■ ¶ 16 Similarly, Girlfriend's argument that the trial court misinterpreted the statute's definition of "[r]easonable person" is unconvincing. Girlfriend argues that because the criminal stalking statute defines reasonable person as a "reasonable person in the victim's circumstances," *see* Utah Code Ann. § 76–5–106.5(1)(e) (2008), a reasonable person in Wife's circumstances would not have actually been afraid of Girlfriend's threats because "[Girlfriend] was not standing on [Wife's] front porch with a gun in hand." However, there is nothing in the statute that requires the trial court to find both that the stalker threatened the victim and that the victim believed that the stalker's attempt to implement the threat was imminent. *Compare* Utah Code Ann. § 76–5–106.5(2) (containing no requirement that a reasonable stalking victim fear imminent action by stalker), *with* Utah Code Ann. §§ 78B–7–102(1), –103 (2008) (defining the abuse necessary to support a protective order as "intentionally or knowingly placing a cohabitant in reasonable fear of imminent physical harm").

¶ 17 Additionally, Girlfriend misinterprets the focus of the requirement. According to the model code's commentary, the language "in a victim's circumstances" is meant to protect victims of actions that may seem benign, but are actually threatening; it is not intended to protect a stalker who does not intend to carry out his or her threats. *See* National Ctr. for Victims of Crime, *The Model Stalking Code Revisited,* cmt. at 37 (2007) (noting that if a stalker delivers roses to a victim, the gesture would not seem threatening unless the stalker previously told the victim that he would kill her when she received roses); *see also Ellison,* 2006 UT App 150, ¶ 38, 136 P.3d 1242 (noting that conduct that would not be distressing to a stranger may be outrageous when directed at a victim who the actor had previously sexually assaulted); *cf. Martin,* 2009 UT App 227, ¶ 12, 217 P.3d 1147 (noting that the trial court could consider "any physical abuse occurring when [the daughter] was a minor child that may [have] contribute[d] to the reasonableness of her fear of harm"). Thus, the trial court did not err when it based its order granting a civil stalking injunction on its finding that a reasonable person in Wife's circumstances would be afraid when threatened twice by her husband's armed girlfriend, notwithstanding the Girlfriend's claim that she did not intend to carry out the threats.

■ ¶ 18 Next, Girlfriend argues that the trial court erred by disregarding subsection (1)(d) of the criminal stalking statute, which defines "[e]motional distress" as "significant mental or psychological suffering, whether or not medical or other professional treatment or counseling is required." *See* Utah Code Ann. § 76–5–106.5(1)(d). Girlfriend contends that our decisions in *Salt Lake City v. Lopez,* 935 P.2d 1259 (Utah Ct.App.1997), and its progeny hold that her conduct must be outrageous in order to satisfy the emotional distress prong of the stalking statute and that the trial court could not make such a finding based on her conduct here. *See id.* at 1264 (explaining that "[e]motional distress results from conduct that is outrageous and intolerable in that it offends the generally accepted standards of decency and morality" (internal quotation marks omitted)). However, the *Lopez* court looked to tort law to define "emotional distress" because the prior version of the stalking statute did not contain a definition for that term. *See id.; see also* Utah Code Ann. § 76–5–106.5 (2003). The Utah appellate courts have not yet had occasion to decide whether *Lopez* is still relevant in light of the legislature's subsequent adoption of a statutory definition of emotional distress. However, we need not resolve that question today because we conclude that Girlfriend threatening to shoot Wife twice with the gun Husband allegedly gave to Girlfriend for that purpose easily satisfies the *Lopez* requirement that the conduct be outrageous, intolerable, and offensive to the general standards of decency and morality, *see Lopez,* 935 P.2d at 1264, as well as the legislature's requirement that such conduct cause a reasonable person "to fear for the person's own safety," Utah Code Ann. § 76–5–106.5(2)(a) (2008), or to experience "significant mental or psychological suffering," *id.*

§ 76–5–106.5(1)(d). Therefore, we leave for another day the question of whether the current statutory definition of "emotional distress" is the same as or broader than the definition borrowed from tort law.

### CONCLUSION

¶ 19 In sum, the trial court did not misinterpret or misapply the criminal stalking statute when it issued a civil stalking injunction against Girlfriend. Further, Girlfriend's challenge to the adequacy of the detail of the trial court's factual findings is not preserved and she did not marshal the evidence as required to challenge the sufficiency of the evidence to support those findings.

¶ 20 Affirmed.

¶ 21 WE CONCUR: WILLIAM A. THORNE JR. and STEPHEN L. ROTH, Judges.