IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| Pamela A. Slone, | ) | MEMORANDUM DECISION |
| | ) | |
| Petitioner and Appellee, | ) | Case No. 20110461-CA |
| | ) | |
| v. | ) | F I L E D |
| | ) | (October 25, 2012) |
| Amie Brown, | ) | |
| | ) | 2012 UT App 300 |
| Respondent and Appellant. | ) | |

-----

Second District, Ogden Department, 110902307
The Honorable Noel S. Hyde

Attorneys:     Michael J. Boyle, Ogden, for Appellant
               Pamela A. Slone, West Haven, Appellee Pro Se

-----

Before Judges Orme, McHugh, and Roth.

McHUGH, Judge:

¶1     Amie Brown appeals from a civil stalking injunction entered against her at the request of her neighbor, Pamela A. Slone. We affirm.

¶2     The Brown and Slone residences are separated by a pasture in which Slone sometimes kept her family's dog. On March 19, 2011, the dog escaped from confinement and Brown believed that it was acting aggressively toward her children. The incident resulted in a confrontation between Brown and Slone, as well as subsequent events that Slone considered threatening and harassing.

¶3     On April 1, 2011, Slone filed a Request for a Civil Stalking Injunction against Brown (the Request). The Request states that Brown "came over to [Slone's] house . . . , chased [the] dog with mace and yelled at [Slone] saying she was going to shoot [the] dog and string him up in her garage." It also alleges that Brown threatened to "kick [Slone's] ass," and that Brown "later approached [Slone's] house with a loaded shotgun." In addition, the Request claims that Brown made a hand signal directed at Slone that mimicked pointing a gun at her and pulling the trigger. Finally, Slone indicates that Brown engaged in "harassing [Slone's] landlords" for the purpose of getting rid of the dog and having Slone evicted.[1]

¶4     Based on the allegations in the Request, the trial court entered an Ex Parte Temporary Civil Stalking Injunction against Brown on April 4, 2011. In response, Brown filed a Request for Hearing, and on April 20, 2011, the parties appeared before the trial court with each representing herself. After explaining the purpose of the hearing, the trial court invited each party to make an opening statement. Both Brown's and Slone's statements included factual assertions about the events identified in the Request.

¶5     When the parties completed their opening statements, the trial court explained,

> The statements of each of you have included numerous factual representations, representations of the facts as you each understand them. Neither of you has been placed under oath, however, in these proceedings, and in order for the Court to consider your statements as evidence, I can do so based upon the parties agreeing that these facts can be considered based upon the proffered statements of the parties. If the parties agree that I can consider your statements as factual statements, I will accept your proffers as the facts that the court should consider.

¶6     The court then obtained permission from each party to proceed in that manner, specifically inquiring,

---

[1]As a result of Brown's threats to sue Slone's landlords, the landlords required Slone to give up the dog.

| [Court:] | Ms. Slone, do you have any objection to my considering Ms. Brown's statements as a proffer of what she would say if she were called to testify? |
|---|---|
| [Slone:] | No. |
| [Court:] | Ms. Brown, do you have any objection to my considering Ms. Slone's statements to be what she would testify to if she were called to testify? |
| [Brown:] | No. |

¶7    Next, the trial court asked if either party would like to cross-examine the other. Although Slone declined, Brown accepted the trial court's invitation. Accordingly, the trial court placed Slone under oath and Brown cross-examined her about her proffered statements. When Brown finished, the trial court invited each party to offer any exhibits she wished the court to consider, elicited any objections, and issued rulings on the admissibility of each. At that point, the trial court formally closed the evidence and invited the parties to make closing arguments.

¶8    After arguments, the trial court ruled that Slone had met her burden of establishing that she was entitled to a three-year civil stalking injunction against Brown.[2] The trial court concluded that there were three incidents of stalking directed at Slone: (1) the threats against Slone made by Brown on March 19, 2011; (2) Brown's internet postings from March 19–23, 2011 (the blog), which included "threats which if reviewed and perceived by a reasonable person could reasonably cause emotional distress or cause an individual to be fearful of [her] personal safety or the safety of an immediate family member, spouse, sibling or child"; and (3) Brown's contacts with Slone's landlords, which the trial court ruled were directed at Slone and caused her "reasonably to be concerned about the personal safety of herself or members of her family." Although the trial court also found that Brown had used a weapon, it determined that the weapon was directed at the dog and not at Slone. As a result, the

---

[2]The injunction orders that Brown "must not contact or stalk" Slone.

trial court declined to find that Brown had "used or intended to" use a weapon against Slone. Brown filed a timely appeal.

¶9 Brown first challenges the trial court's acceptance into evidence of the factual allegations made during opening statements by proffer, claiming that rule 603 of the Utah Rules of Evidence requires that witnesses be sworn before testifying. *See* Utah R. Evid. 603 ("Before testifying, a witness must give an oath or affirmation to testify truthfully. . . .").[3] She further claims that she was entitled to immediate cross-examination. To preserve an issue for appellate review, the issue must be presented to the trial court in a manner that provides the trial court with an opportunity to rule on the issue. *438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801. "This requirement puts the trial judge on notice of the asserted error and allows for correction at that time in the course of the proceeding." *Id*. Brown's claim was not properly preserved in the trial court because she did not object to proceeding by proffer, despite the trial court's direct inquiry about whether she had any objection to doing so. *See Clark Props., Inc. v. JDW-CM, LLC*, 2012 UT App 163, ¶¶ 7–8, 282 P.3d 1009 (mem.) (rejecting a claim that the trial court improperly failed to conduct a hearing where the plaintiff's conduct indicated that it had no objection to the proceedings).

¶10 Brown acknowledges that she did not object in the trial court but claims that we can review the trial court's failure "to place witnesses under oath and permit immediate cross-examination" under the doctrine of plain error. While the plain error doctrine provides an exception to the preservation rule in some instances, it is not applicable here because any alleged error in accepting the unsworn statements as a proffer of evidence was invited by Brown. *See State v. Moa*, 2012 UT 28, ¶ 4, 282 P.3d 985 ("We hold that we do not need to address whether the court of appeals correctly evaluated [the defendant's] claim under the plain error standard because, by stipulating that his plea was taken in compliance with rule 11, [the defendant] invited the district court's error."); *State v. Winfield*, 2006 UT 4, ¶ 14, 128 P.3d 1171 ("[U]nder the doctrine of invited error, we have declined to engage in even plain error review when 'counsel, either by statement or act, affirmatively represented to the [trial] court that he or she had no objection to the [proceedings].'" (second and third alterations in original)

---

[3]Because 2011 amendments to the Utah Rules of Evidence were "intended to be stylistic only," we cite the current version for the convenience of the reader. *See* Utah R. Evid. 604, 2011 advisory committee's note.

(quoting *State v. Hamilton*, 2003 UT 22, ¶ 54, 70 P.3d 111)). Brown affirmatively consented to the trial court's consideration of the facts presented during opening statements as if the parties had been sworn. Accordingly, Brown invited any error in the proceedings and we decline to consider her objection to the manner in which the proceedings were conducted on the merits. Furthermore, Brown took advantage of the opportunity to cross-examine Slone under oath about those statements. As a result, she cannot show any prejudice due to the trial court's reliance on Slone's proffered testimony and cannot prevail under the doctrine of plain error. *See Meadow Valley Contractors, Inc. v. State Dep't of Transp.*, 2011 UT 35, ¶ 17, 266 P.3d 671 ("The party seeking the benefit of the plain error exception must demonstrate that (i) an error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome." (citation and internal quotation marks omitted)).

¶11　Next, Brown contends that the trial court erred in concluding that her conduct constituted stalking. "'The proper interpretation and application of a statute is a question of law which we review for correctness, affording no deference to the district court's legal conclusion[s].'" *Ellison v. Stam*, 2006 UT App 150, ¶ 16, 136 P.3d 1242 (alteration in original) (quoting *Gutierrez v. Medley*, 972 P.2d 913, 914–15 (Utah 1998)). However, we review the trial court's factual findings for clear error and reverse only if a "finding is against the clear weight of the evidence, or if we otherwise reach a firm conviction that a mistake has been made." *Id.* ¶ 17 (citation and internal quotation marks omitted).

¶12　To obtain a civil stalking injunction, the petitioner must establish the elements necessary to meet the definition of stalking provided in the criminal code. *See* Utah Code Ann. § 77-3a-101(1) (LexisNexis Supp. 2012) ("Civil stalking injunction").[4] The Utah Legislature has defined criminal stalking as follows:

> A person is guilty of stalking who intentionally or
> knowingly engages in a course of conduct directed at a
> specific person and knows or should know that the course of

---

[4]Because 2012 amendments to the Utah Code did not substantively change the code for purposes of our analysis, we cite the current version for the reader's convenience.

conduct would cause a reasonable person: (a) to fear for the person's own safety or the safety of a third person; or (b) to suffer other emotional distress.

*Id*. § 76-5-106.5(2). In turn, "course of conduct" means,

> [T]wo or more acts directed at or toward a specific person, including:
>
> (i) acts in which the actor . . . threatens, or communicates to or about a person, or interferes with a person's property: (A) directly, [or] indirectly . . . ; and (B) by any action, method, device, or means; or
>
> (ii) when the actor engages in any of the following acts . . . (C) . . . contacts a person's neighbors . . . ; (D) sends material by any means for the purpose of . . . disseminating information about . . . the person to a . . . friend, or associate of the person; . . . or (F) uses a computer, the Internet, text messaging, or any other electronic means to commit an act that is a part of the course of conduct.

*Id.* § 76-5-106.5(1)(b).

¶13     Brown concedes that her confrontation with Slone on March 19, 2011 constitutes one instance of a course of conduct under the statutes. She challenges instead the trial court's consideration of either the blog or her communications with Slone's landlords as a second qualifying incident.

¶14     When interpreting a statute, we attempt to apply it in a manner that is consistent with the intent of the Utah Legislature, the best evidence of which is the statute's plain language. *See Marion Energy, Inc. v. KFJ Ranch P'shp*, 2011 UT 50, ¶ 14, 267 P.3d 863. The definition of course of conduct includes communications "to or about" the person. Utah Code Ann. § 76-5-106.5(1)(b)(i). In addition, a course of conduct expressly includes communications using the internet. *Id.* § 76-5-106.5(1)(b)(ii)(F). Thus, the Utah Legislature has unambiguously expressed its intent to include the communications about Slone posted on the internet by Brown as an act that can form the basis of a

course of conduct. In order to do so, the stalking statute requires only that (1) Brown "'intentionally or knowingly engage[d] in a course of conduct directed at'" Slone and (2) that Brown "'[knew] or should [have known] that the course of conduct would cause a reasonable person' fear or emotional distress." *See Bott v. Osburn*, 2011 UT App 139, ¶ 11, 257 P.3d 1022 (alterations in original) (quoting Utah Code Ann. § 76-5-106.5(2) (LexisNexis 2008) (current version at *id.* (LexisNexis Supp. 2012))).

¶15    Brown argues that her blog entries and the actions described in them were not "directed at" Slone. In particular, she relies on the fact that Slone did not learn until reading the blog a week later that after the initial incident, Brown had armed herself with a loaded shotgun and started toward Slone's house intending to shoot the dog.[5] However, Brown admits that she assumed Slone's landlords alerted Slone to the blog entry titled "Kill Time," thereby strongly suggesting that Brown knew that the landlords were familiar with the site. It is also apparent that other neighbors were aware of the blog because Slone indicated that she learned of it from "some other neighbors." Thus, Brown's use of the internet can constitute a course of conduct under the statute, even though not sent to Slone. *See* Utah Code Ann. § 76-5-106.5(1)(b)(ii)(C) (defining course of conduct to include "contact[ing] a person's neighbors"); *id.* § 76-5-106.5(1)(b)(ii)(D) (defining course of conduct to include "send[ing] material by any means . . . for the purpose of . . . disseminating information about . . . the person to a . . . friend, or associate of the person"). Nor are we persuaded by Brown's argument that the comments were not directed at Slone because she did not use Slone's name in the postings. Notwithstanding Brown's references to Slone in her blog as "the lady," the details of the encounter were specific enough that Slone's neighbors identified her as the target of the threats and directed her to the site. Under these circumstances, we agree with the trial court that the comments in the blog were directed at Slone.

¶16    Next, Brown argues that she did not have "the requisite intent to engage in a course of conduct that . . . she knows or should know would cause a reasonable person to fear or suffer emotional distress." *See Bott*, 2011 UT App 139, ¶ 8. Under the statute, however, "it is not a defense that the actor . . . did not intend to cause the victim fear or

---

[5]Brown concedes that her blog entry accurately reflects that she grabbed a loaded shotgun and left her house with the intent to return to Slone's house and shoot the dog but that her husband intervened and persuaded her to desist. Slone admits that she did not become aware of these facts until approximately one week later.

other emotional distress." Utah Code Ann. § 76-5-106.5(4). Rather, if the conduct "would cause a reasonable person . . . to fear for that person's own safety or the safety of a third person; or . . . to suffer other emotional distress," it can constitute part of a course of conduct. *Id.* § 76-5-106.5(2). In reviewing the court's determination, we consider the distress or fear caused from the perspective of a reasonable person under all of the circumstances. *Ellison v. Stam*, 2006 UT App 150, ¶ 32, 136 P.3d 1242.

¶17 Here, Brown admits that she "definitely yelled at [Slone] at the top of [her] lungs," threatened to give Slone an "ass kicking," and also threatened to kill the dog. She further acknowledges that she made calls to Slone's landlords complaining about the dog and threatening to sue. Although Brown denied in court that she had pretended to shoot Slone with her finger while the police were present, she admitted posting an entry in her blog that states, "I sort of threatened [Slone] in front of the Sheriff which wasn't the best either." With that history, Slone read entries in Brown's blog that include the following statements, "I grabbed my 20 gauge, loaded it and put three shells in my pocket for good luck"; "I had a 20 gauge with one in the chamber, I had sprayed mace twice, and I was going to kill the dog, I had threatened the dog owner with physical bodily harm, was still possibly . . . going to kick the owner's ass"; "I am not afraid to fight in the middle of the street with witnesses, or to fight dirty in secret"; "[My husband] said I would be in jail right now based on the events and the fact that I openly threatened and had a shotgun, loaded and with one in the chamber, with the safety off"; and "I promised [my husband] I would stay out of trouble but I was having fantasy thoughts of black leather gloves with the steel shot in the knuckles." Under these circumstances, we are not persuaded that the trial court erred in concluding that Brown should have known that the entries in her blog would cause a reasonable person to be frightened and distressed.[6] Indeed, even Brown acknowledged that she could "see

---

[6]Although Brown also claims that internet postings are "protected speech," that single sentence is the only argument she offers on this issue, and she cites no supporting legal authority. As a result, we do not consider this argument. *See* Utah R. App. P. 24(a)(9) ("The argument shall contain the contentions and reasons of the appellant with respect to the issues presented . . . with citations to the authorities, statutes, and parts of the record relied on."); *State v. Gomez*, 2002 UT 120, ¶ 20, 63 P.3d 72 ("[A] reviewing court . . . is not simply a depository in which the appealing party may dump the burden of argument and research." (citation and internal quotation marks omitted)).

how Ms. Slone was upset by it."[7] Thus, the trial court did not err in entering a civil stalking injunction against Brown.[8]

¶18    In summary, Brown invited any error in the trial court's decision to rely upon the unsworn statements made by the parties during opening statements and the timing of her cross-examination of Slone. Brown engaged in two qualifying acts constituting a course of conduct that she should have known would cause a reasonable person to fear for her safety or to suffer emotional distress. Accordingly, the trial court did not err in entering a civil stalking injunction against Brown.

¶19    Affirmed.


_____
Carolyn B. McHugh, Judge


-----


¶20    WE CONCUR:


_____
Gregory K. Orme, Judge


_____
Stephen L. Roth, Judge

---

[7]During her opening statement, Slone explained that she and her children are frightened of Brown and that Brown's internet postings are "very disturbing."

[8]Because only two acts are required to establish a course of conduct, *see* Utah Code Ann. § 76-5-106.5(1)(b) (LexisNexis Supp. 2012), we need not consider Brown's argument that the trial court improperly considered "inadmissible hearsay" when it took into account her contact with Slone's landlords in its "course of conduct" determination.