2013 VT 83

## In re Christopher Hoch

[82 A.3d 1167]

No. 12-330

Present: Reiber, C.J., Dooley, Skoglund, Burgess and Robinson, JJ.

Opinion Filed September 13, 2013

*Robert L. Sussman* of *Blodgett, Watts, Volk & Sussman, P.C.*,
Burlington, for Petitioner-Appellee/Cross-Appellant.

*William H. Sorrell*, Attorney General, and *Ultan Doyle*, Assistant Attorney General, Montpelier, for Respondent-Appellant/Cross-Appellee.

¶ 1. **Skoglund, J.** In this post-conviction-relief (PCR) action, both petitioner and the State appeal from two March 2012 orders in which the superior court, civil division, vacated petitioner's aggravated stalking conviction after granting each party summary judgment on different aspects of the PCR petition. We reverse the court's decisions granting petitioner summary judgment and vacating the aggravated stalking conviction, affirm the court's grant of summary judgment to the State on petitioner's ineffective-assistance-of-counsel claim, and dismiss petitioner's PCR petition.

¶ 2. In April 2004, petitioner was charged with aggravated stalking based on an incident in which he entered the curtilage of a private residence and surreptitiously watched and photographed a thirteen-year-old girl through her bedroom window and other parts of the house. Following petitioner's arrest in the stalking incident, police obtained a warrant to search his house. The resulting search led to petitioner being charged in July 2004 with five counts of possession of child pornography.

¶ 3. In December 2004, petitioner filed a motion to dismiss the aggravated stalking charge on the grounds that the State could not make out a prima facie case as to every element of the charge. The trial court denied the motion, concluding in relevant part that the element in the stalking statute requiring the perpetrator's conduct to cause the victim fear or emotional distress did not require the conduct and the fear or emotional distress to be contemporaneous. In January 2005, petitioner filed a motion to suppress evidence found in his car, home, and camera, which the court denied.

¶ 4. In June 2005, petitioner pled guilty to one count of aggravated stalking and two counts of child pornography. He received a sentence of three to five years, all suspended but thirty days, to be followed by thirty days of work crew. In April 2008, petitioner was charged with a violation of the terms of his probationary sentence and, after a hearing, his probation was revoked.

¶ 5. In August 2009, petitioner filed a pro se PCR petition. Subsequently, he was appointed two different attorneys, who filed amended petitions in September 2009 and July 2010, respectively.

In the latter amended petition, petitioner argued that there was no factual basis for the trial court to accept his guilty plea to the aggravated stalking charge because any fear that the victim felt as the result of his conduct was not contemporaneous with the conduct. He also argued that his trial counsel was ineffective because he: (1) failed to challenge the justification for the initial stop that led to his arrest; (2) failed to request a hearing on his motion to suppress evidence obtained pursuant to an allegedly defective search warrant; (3) allowed petitioner to plead guilty to multiple counts of child pornography; (4) failed to preserve a right to appeal with his plea; and (5) failed to engage an expert to examine how his camera operated.

¶ 6. In March 2011, the State filed a motion for summary judgment, arguing that there was a factual basis for petitioner's guilty plea on the aggravated stalking charge and that petitioner's trial counsel was not ineffective. In two March 2012 orders, the superior court granted the State's motion with respect to four of the five claims of ineffective assistance of counsel and scheduled a hearing on petitioner's claim that counsel was ineffective for failing to seek a hearing on his motion to suppress. The court denied the State's motion for summary judgment on whether there had been a factual basis to his plea on the aggravated stalking charge. The court then found no factual basis for the aggravated stalking charge and vacated the same. In making the latter determination, the court cited the absence of any evidence that the victim was aware of petitioner's presence and thus experienced fear or distress at the time petitioner engaged in the conduct that led to the stalking charge. In August 2012, after holding a hearing on the surviving ineffective-assistance-of-counsel claim, the court granted petitioner's PCR petition, incorporating by reference the March orders into its final judgment.

¶ 7. The State appeals, arguing that the victim's fear did not have to be contemporaneous with petitioner's stalking conduct, and thus the superior court erred in concluding that there was no factual basis to the aggravated stalking charge. In his cross-appeal, petitioner argues that the superior court erred in granting the State summary judgment on the issue of whether there was a lawful initial investigatory detention of petitioner during the incident that led to the stalking charge.

¶ 8. We first examine the State's claim of error. At the time petitioner engaged in the conduct that led to the aggravated

stalking charge, stalking was defined, in relevant part, as a course of conduct consisting of following, lying in wait, or harassing, that "causes the person to fear for his or her physical safety or causes the person substantial emotional distress." 13 V.S.A. § 1061(1)(B) (1993). The current version, as amended in 2005, defines stalking as a course of conduct described above that "would cause a reasonable person to fear for his or her physical safety or would cause a reasonable person substantial emotional distress." 13 V.S.A. § 1061(1)(B).

¶ 9. The superior court appears to have concluded that the Legislature amended the statute to substitute an objective standard for a subjective standard with respect to the element requiring that the victim experience fear or emotional distress, thereby no longer requiring that a particular victim's fear or distress be contemporaneous with the perpetrator's conduct. In other words, the court presumed that the former statute governing this case required that the unlawful conduct and the resulting fear occur contemporaneously. Read in this manner, petitioner could not have been convicted under the former statute because of the absence of any evidence that the conduct and fear were contemporaneous.

¶ 10. ■ We fail to see how the legislative change to the statute suggests that the former statute required fear contemporaneous with the charged conduct. We agree that the Legislature amended the statute to criminalize conduct that would make a reasonable person fearful, thereby relieving the State of the burden of proving that a particular victim actually felt fear. See *Bott v. Osburn*, 2011 UT App 139, ¶ 9, 257 P.3d 1022 (stating that legislature's deletion of language requiring that defendant's conduct actually cause fear or emotional distress "shows a legislative purpose to eliminate proof of the victim's actual fear or actual distress as an element of stalking"). But the new language in the statute has no bearing on the timing of a victim's fear or emotional distress in relation to the perpetrator's conduct.

¶ 11. ■ No language in the aggravated stalking statute requires that the victim's fear or emotional distress be contemporaneous with the stalking conduct. Its terms suggest no such concurrence is required. For example, "lying in wait," defined as "hiding or being concealed for the purpose of attacking or harming another person," is a type of stalking conduct in which

the conduct and the fear are unlikely to be contemporaneous because of the nature of the conduct. 13 V.S.A. § 1061(5). Another type of stalking conduct under the statute, "harassing" behavior, includes "written, telephonic, or other electronically communicated threats," which often will not result in simultaneous fear or emotional distress. *Id.* § 1061(4); see *People v. Norman*, 89 Cal. Rptr. 2d 806, 809-10 (Ct. App. 1999) (reasoning that stalking statute plainly did not "require a concurrence of act and reaction," as demonstrated by fact that stalking could occur by way of e-mail, "in which event the victim's fear, on reading the e-mail, would occur hours or days or weeks after the threat was made").

¶ 12. ■ As the court in *Norman* stated, the "obvious" conclusion is "that the Legislature's failure to include in the statute words that would require that the cause be contemporaneous with the effect means that that there is no such requirement." 89 Cal. Rptr. 2d at 810. Petitioner's attempts to distinguish *Norman* are unavailing. Like the court in *Norman*, we find no basis in the stalking statute to require that the perpetrator's act and the victim's fear be contemporaneous.

¶ 13. In this case, the victim stated in an affidavit that when she learned from her brother later the same evening that her father had caught a man peeping through her bedroom window, she was afraid to sleep in her room, she feared being home alone, she was still nervous about it, and she had changed some behaviors as a result of her fears.

¶ 14. During the colloquy when petitioner entered his plea to the aggravated stalking charge, he admitted to sneaking up to the victim's bedroom window, following the victim from window to window, and taking photographs of her. Although petitioner stated that he did not intend to put anybody in fear, he acknowledged that he committed an illegal act and that, based upon the facts stated in the arresting officer's affidavit, a jury could have found him guilty of aggravated stalking because he caused the minor victim to be fearful when she learned of his actions. In short, the record reveals that the trial court confirmed at the plea hearing that there was a factual basis for the plea, as required by V.R.Cr.P. 11(f). Because, as determined above, the elements of the charged offense do not include a requirement that the perpetrator's conduct and the victim's fear or distress be contemporaneous, the superior court erred in vacating the aggravated stalking conviction.

¶ 15. In his cross-appeal, petitioner argues that the superior court erred by concluding that his trial counsel was not ineffective for failing to file a motion to suppress based upon the unlawfulness of the petitioner's initial detention at the time of his arrest. Before addressing this issue, it is helpful to recite the undisputed facts concerning that detention. The victim in this case is the daughter of a police officer, who was off duty, at home, in his backyard hot tub at approximately nine o'clock at night when he observed a man surreptitiously creep up to his daughter's bedroom. The man put his face close to the window for a few seconds and then temporarily moved towards the end of the house. The officer/homeowner/father knew that his daughter was in her bedroom at the time because he had seen her there minutes earlier before going outside. When the officer left the hot tub and went into the house to get changed, he saw the man walk away from the house and then back to his daughter's bedroom window on two more occasions. Through these observations, the officer was able to note the man's appearance and attire.

¶ 16. As the officer went outside to confront the intruder, he heard a vehicle door close and an engine start. The vehicle, which had been parked just beyond the driveway of the officer's home, went up the dead-end street, turned around, and headed back toward the residence. As the vehicle approached his residence, the officer stepped into the street and motioned for the driver to stop. The driver stopped and rolled down his window. Asked what he was doing, the driver stated that he was looking for a dog that he had hit with his car. When the officer told the driver that he had seen him peering through his daughter's bedroom window, the driver maintained his story that he had gone behind the house to look for the dog.

¶ 17. At that point, the officer informed the driver that he was a police officer and asked the driver for identification. The driver handed the officer a driver's license identifying him as petitioner. Knowing that his wife had called the police, the officer asked petitioner to get out of his vehicle to await their arrival. Petitioner complied at first but then attempted to get back in the vehicle and start the ignition. The officer reached into the vehicle and pushed petitioner's hands away from the ignition. Petitioner attempted to close the driver's side door on the officer, and the officer hit him on his side with a flashlight. A couple of minutes later, the police arrived and arrested petitioner for trespassing. Petitioner was

handcuffed, and a search of his person turned up a pair of latex gloves and a digital camera.

¶ 18. Petitioner claimed in his amended petition that his trial counsel was ineffective for not filing a motion to suppress based on his unlawful detention on the night of the incident. The superior court rejected this claim, ruling that although it might have been better practice for his attorney to have challenged the detention, petitioner could not demonstrate prejudice because of the unlikelihood of prevailing on such a challenge. Citing *State v. Young*, 2010 VT 97, 189 Vt. 37, 12 A.3d 510, the court stated that, although petitioner was stopped by a police officer, the officer was off duty and acting as private citizen rather than a government actor when he detained petitioner based on a reasonable belief that petitioner had committed a felony.

¶ 19. On appeal, petitioner argues that his detention was unlawful because his conduct could not have evoked a reasonable suspicion that he had committed any identifiable crime, let alone a felony. According to petitioner, the only crime that he may have committed was voyeurism, and Vermont's voyeurism statute had not yet been enacted at the time of the incident in question. According to petitioner, because the off-duty officer had no authority to stop or detain him, the aggravated stalking charge would have been dismissed if his trial counsel had moved to suppress evidence based on the unlawfulness of his detention.

¶ 20. As noted, in rejecting this argument, the superior court relied upon *Young*, wherein we concluded that an initial encounter between an off-duty officer and a driver who had pulled into the officer's private driveway late at night was outside the scope of the Fourth Amendment because the officer was acting as a private citizen rather than a government actor when he detained the driver. 2010 VT 97, ¶¶ 10, 15; see generally 1 W. LaFave, Search and Seizure § 1.8(d), at 420 (5th ed. 2012) ("[A] search is private if the off-duty officer was at that time acting as a private individual rather than as a policeman."). Notwithstanding petitioner's attempts to distinguish *Young*, we agree with the superior court that, at least initially, the off-duty officer in this case was acting as a private citizen protecting his property and family. See *Young*, 2010 VT 97, ¶ 15 ("[T]here can be no substantial doubt that the officer here was acting to protect his property and family, and the trial court so found."). The officer had just seen a man peering into his daughter's bedroom window on multiple occasions

late at night. He identified the person attempting to leave in a vehicle as that man, and he had every right as a private citizen and homeowner to confront the man to determine what he had been doing on his property. The fact that the homeowner was an off-duty officer did not negate that right.

¶ 21. ■ Hence, up until the time he announced he was a police officer and asked petitioner for identification, the officer was acting as a private citizen rather than a government actor subject to the restrictions of the Fourth Amendment. At that point, when petitioner sought to explain his behavior of peering into windows by giving the officer a story that did not comport with the actions the officer had observed, the officer was justified in further detaining petitioner to await the arrival of the police based on a reasonable suspicion that he had been engaged in criminal activity. See *State v. Chapman*, 173 Vt. 400, 402, 800 A.2d 446, 449 (2002) (noting that brief detention is permitted if officer has reasonable grounds to suspect that detainee was engaged in wrongdoing at time of encounter); cf. *State v. Bacon*, 2005-Ohio-6238, ¶ 72, 2005 WL 3120233 (Ct. App.) (concluding that officers had requisite reasonable suspicion to detain suspect who had been peering in windows of private residence); *State v. Dickerson*, 2002-Ohio-381, 2002 WL 126087, at \*1, \*3 (Ct. App.) (same).

¶ 22. Petitioner seeks to avoid this conclusion by contending that, at most, his behavior amounted to voyeurism, which was not a crime at the time, and did not satisfy the elements of aggravated stalking, which is a felony. This contention is essentially a reiteration of his first argument, which we resolved in favor of the State. Accordingly, the contention is unavailing for the reasons stated above.

¶ 23. ■ Petitioner asserts further that the duration of the stop and the officer's use of force turned the stop into a de facto arrest lacking the requisite probable cause. See *Chapman*, 173 Vt. at 403, 800 A.2d at 449 ("Courts have recognized . . . that an investigatory detention or *Terry* stop may become 'too intrusive to be classified as an investigative detention' and may instead become the functional equivalent of a de facto arrest." (quoting *United States v. Perea*, 986 F.2d 633, 645 (2d Cir. 1993) (citations omitted))). " 'Whether a seizure is an arrest or merely an investigatory detention, depends on the reasonableness of the level of intrusion under the totality of the circumstances.' " *Id.* (quoting

*Posr v. Doherty*, 944 F.2d 91, 98 (2d Cir. 1991)). "In assessing whether the degree of restraint is too intrusive to be classified as an investigative detention," courts consider a number of factors, including the amount of force applied, the extent to which the detainee is restrained, whether handcuffs were used, the number of agents involved, the duration of the stop, and whether the detainee was suspected of being armed. *Id.*

¶ 24. Petitioner cites the duration of the stop and the officer's use of force to support his contention that there was a de facto arrest. Regarding the duration of the stop, petitioner states only that the detention was for "an extended period of time," without being more specific. In fact, the record shows that the entire stop lasted several minutes at most. The police responded within three minutes of receiving a telephone call from the officer's wife, who had been asked by her husband to call the police as he left to confront the intruder. In short, the duration of the stop was relatively brief.

¶ 25. ■ As for the force used by the officer, "if there is reasonable ground for suspicion that will justify an investigatory stop, reasonable force may be used to effect that stop." *United States v. Streifel*, 665 F.2d 414, 422 (2d Cir. 1981); see *Graham v. Connor*, 490 U.S. 386, 396 (1989) ("Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."). Here, the lone officer did not use handcuffs or restrain petitioner other than requiring him to remain while awaiting the imminent arrival of the police. Cf. *Chapman*, 173 Vt. at 405-06, 800 A.2d at 450-51 (concluding that detention was too intrusive to be considered merely investigative stop where officer drew his weapon, ordered defendant to his knees, and frisked him despite absence of evidence that defendant was suspected of serious criminal activity). When petitioner attempted to leave in his vehicle, however, the officer pushed him toward the passenger seat and struck him once on the side with a flashlight. The State asserts that this use of force was no more than necessary to make petitioner comply with the brief investigative stop pending the imminent arrival of other officers. See *id.* at 402-03, 800 A.2d at 449 (stating that investigative detention employs least intrusive means reasonably available to verify or dispel officer's suspicions in short period of time).

¶ 26. ■ We need not determine in this case whether the officer's use of force transformed his investigatory stop into a de facto arrest, insofar as the officer had probable cause to arrest petitioner, having observed him engage in activities that, as we ruled above, support his conviction for the offense of aggravated stalking. See *State v. Chicoine*, 2007 VT 43, ¶ 8, 181 Vt. 632, 928 A.2d 484 (mem.) (stating that probable cause for warrantless arrest "exists when the facts and circumstances known to an officer are sufficient to lead a reasonable person to believe that a crime was committed and that the suspect committed it"). Therefore, the superior court did not err in determining that petitioner failed to show that he was prejudiced by his attorney not filing a motion to suppress based on the unlawfulness of the stop.

*The superior court's decisions granting summary judgment to petitioner and vacating his aggravated stalking conviction are reversed. The court's decision granting the State summary judgment on petitioner's ineffective-assistance-of-counsel claim is affirmed, and petitioner's PCR petition is dismissed.*